In the Matter of GONKJUR ASSOCIATES, Respondent, v ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant.

First Department, October 6, 1981

APPEARANCES OF COUNSEL

*Gerald J. Hurwitz* of counsel *(Erica Forman* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellant.

*Steven R. Lapidus* of counsel *(Stanford M. Singer* with him on the brief; *Abrams Lerner Kisseloff & Kissin,* attorneys), for respondent.

OPINION OF THE COURT

BLOOM, J.

This appeal confronts us with the question of the authority of the Attorney-General under the Martin Act (General Business Law, art 23-A [the Act]) in respect to a plan of co-operative ownership submitted to him for filing. Collateral to this issue is the effect of a judgment directing the filing of the offering plan upon an independent proceeding brought by the Attorney-General under section 354 of the General Business Law.

Gonkjur Associates, the petitioner herein, is a general partnership which is the owner of premises 1 Plaza Street, Brooklyn, New York. In January, 1979, it decided to sponsor a plan for the conversion to co-operative ownership of the premises owned by it. In the hope of facilitating the filing of the plan, it elected to utilize the optional prefiling procedure authorized by the rules and regulations adopted by the Attorney-General (13 NYCRR 17.3) pursuant to the authority vested in him under section 352-e (subd 6, par [a]) of the General Business Law. It sought thereby to obtain comment upon and analysis of the proposed plan from the Attorney-General's staff before formal submission of the plan, thus obviating the need for repeated amendment.

The proposed plan was submitted for prefiling review on January 15, 1979. The backup documents were submitted 15 days later, on January 30. Receipt of these materials was acknowledged by the Attorney-General on February 15, 1979. In May, 1979 Gonkjur was informed that its statement of the present condition of the building did not meet the standards prescribed by the Act. Discussions took place during the spring of 1979 with a view to curing this defect.

Because of personnel changes in the office of the Attorney-General a hiatus in the consultations ensued. On June 18, 1980, a modified proposed offering plan was submitted. Although this was supplemented by additional information requested by the Attorney-General, the deficiencies noted in the statement of the building's condition were still not rectified. These documents were reviewed by an engineer who found other deficiencies in the revised proposed plan.

On September 4, 1980 a re-revised report on the condition of the building was submitted which was found satisfactory on September 28. In the interim, on September 24, 1980, Gonkjur sought to make a formal filing of its proposed offering statement under section 352-e of the General Business Law. A number of the deficiencies theretofore noted remained uncured.

An attorney on the staff of the Attorney-General was assigned to review the plan. She discussed the deficiencies with counsel for Gonkjur and was assured that most of them would be taken care of by amendment. With respect to one of the alleged deficiencies, however, a report on all litigation pending before any agency or tribunal involving diminution in services at the premises, Gonkjur flatly refused to make disclosure. Since section 17.2 of the rules and regulations of the Department of Law (13 NYCRR 17.2), which governs the matter to be disclosed in any offering plan, mandates such disclosure, the Attorney-General was equally adamant that the proposed plan be amended to include the requested information. Such information, the Attorney-General insisted, was necessary in order to enable him to determine whether maintenance had been deferred in anticipation of the co-opting of the building, with the result that the proposed budget for the first year of the operation of the co-operative, as set forth in the offering plan, would prove inadequate.

On October 16, 1980 the Attorney-General's office received a telephone call from a tenant at the premises notifying it of an ongoing rent strike by some of the tenants. Further information disclosed that while petitioner had been granted maximum base rent increases for 1976 and 1977, the maximum base rent increase for 1980

had been denied. Information was also received that the rent increases for 1976 and 1977 were being contested in a CPLR article 78 proceeding by a group of tenants and it was anticipated that Gonkjur would contest the denial of such increase for 1980. As a result on October 24, 1980, the Attorney-General issued a letter setting forth eight deficiencies in the offering plan. Petitioner reacted by filing its "First Amendment to Offering Plan". By that amendment it answered in detail the first seven deficiencies listed, including all matters in litigation involving diminution of services. A separate certificate of the accountant for Gonkjur was submitted in response to the eighth deficiency.

Thereafter, on November 5, 1980, the Attorney-General commenced an investigation of the proposed offering by issuing subpoenas to the partners of Gonkjur and to its attorneys. These subpoenas were served on November 7, 10, 12 and 13. On November 7, 1980 both Gonkjur and its attorneys were notified that the Attorney-General intended to investigate the acts and practices of each in connection with the offering statement presented for filing. On November 25, 1980, Gonkjur's attorneys notified the Attorney-General that the subpoenas would not be honored. The following day Gonkjur commenced this proceeding.

On or about January 12, 1981 this matter was submitted to Special Term. On January 26, 1971, in pursuance of the authority vested in him under section 354 of the General Business Law and in anticipation of the commencement of an action under the Act, the Attorney-General obtained an ex parte order requiring one Nelson Lyons, the accountant for Gonkjur, Park West Realty, which apparently had prepared a letter of adequacy for petitioner as part of the offering plan, and Gonkjur to appear for examination on February 11, 1981 in connection with the investigation into the proposed offering and sale of apartments in 1 Plaza Street, and to produce certain documents in connection therewith. Additionally, and pending further order of the court, it restrained petitioner "from selling, conveying, transferring or disposing of any right, title or other interest in One Plaza Street". It also enjoined the "offering,

issuing, selling, advertising, promoting, negotiating, distributing, purchasing or exchanging any security or securities consisting of cooperative interests in realty in One Plaza Street".

On February 27, 1981, Special Term rendered its decision. It found that Gonkjur had complied with all of the Attorney-General's demands "having to do with modification and supplementation of petitioner's offering plan" and the plan was, therefore, entitled to be filed. Because of a procedural mixup not here pertinent the judgment, dated April 13, 1981, was not entered until June 25, 1981.

In the interim the Attorney-General moved to punish the partners of Gonkjur for contempt of court for violating the ex parte order of January 26, 1981. That motion was referred to the court which had presided at the present proceeding and came on to be heard before it on June 3, 1981. During argument, reference was made to the ex parte order of January 26. The court indicated that it had not previously been notified of that order. Nevertheless, it construed its judgment dated April 13, 1981 (which had not yet been entered), as having the effect of vacating the ex parte order of January 26, 1981.

I

We turn first to the propriety of Special Term's judgment declaring the offering plan filed and directing that the Attorney-General issue a letter to that effect to petitioner. Section 352-e (subd 1, par [a]) makes it illegal (with specified exceptions): "to make * * * a public offering or sale in or from the state of New York of securities constituted of participation interests * * * in real estate, mortgages or leases * * * when such securities consist primarily of participation interests or investments in one or more real estate ventures, including co-operative interests in realty, unless and until there shall have been filed with the department of law, prior to such offering, a written statement or statements, to be known as an 'offering statement' or 'prospectus' concerning the contemplated offering which shall contain the information and representations required by paragraph [b] of this subdivision".

■ Subdivision 2 of section 352-e precludes a public offering of such security "until the attorney general has issued to the issuer or other offerer a letter stating that the offering has been filed." The Attorney-General is required not later than 30 days after the submission of such offering plan to issue a letter that the offering has been filed, or, in the alternative, a notification in writing indicating deficiencies "in the offering statement, statements or prospectus". We hesitate to tread the quicksand which, in this case, marks the distinction between a ministerial duty and a discretionary function. Be that as it may, the Attorney-General's determination, whether it be to issue a letter stating that the plan has been filed or a letter of deficiencies, is reviewable by the court in a CPLR article 78 proceeding *(Schumann v 250 Tenants Corp.,* 65 Misc 2d 253). Here, the Attorney-General issued a letter of deficiencies. The offering plan was then amended to correct the deficiencies specified. The Attorney-General was then required to review the amended plan to determine whether the deficiencies had been satisfied or new ones had been found to exist *(Matter of Parkchester Apts. Co. v Lefkowitz,* 36 NY2d 688). His failure to do either was a violation of the obligation imposed upon him by law and entitled Gonkjur to the relief sought by it.[*]

Upon the argument the Attorney-General informed us that the very substantial increase in the number of submissions made it virtually impossible for his staff to process these submissions within the 30-day period fixed by the statute. While limitations imposed by budgetary constraints enlist our sympathies we are powerless to remedy the difficulty. The 30-day limitation fixed by subdivision 2 of section 352-e of the General Business Law is mandatory, not directory *(Matter of Parkchester Apts. Co. v Lefkowitz,*

---

[*] Arguably, a case may be made out for the contention that this proceeding was prematurely brought. An amendment to an offering plan constitutes not only a submission of the amendment but a new submission of the plan as amended. This is emphasized by the language of subdivision 2 of section 352-e of the General Business Law which refers to "statement, *statements,* or prospectus" (emphasis supplied). Inasmuch as the amendment was submitted on October 31, 1980, that marked the date from which the Attorney-General had 30 days to issue a letter of filing or of deficiencies. This proceeding was brought on November 26, before the 30-day period had expired. However, on argument, the Attorney-General expressly disclaimed any contention of prematurity. Accordingly, we do not deal with the question.

*supra)*. Remedy, if remedy there is to be, must be legislative and not judicial.

II

The second issue confronting us is somewhat more amorphous. There is no indication in the record that the Attorney-General has appealed from the denial of his motion to punish for contempt. Nevertheless, there is before us a partial record of the argument on that motion at Special Term. More particularly, there is in the record the statement by the court that it construed the effect of its judgment of April 13, 1981 to be a vacatur of the ex parte order of January 26, 1981. Because there is currently pending and undetermined a formal motion to vacate the January 26 order we deem it necessary to note that the duty of the Attorney-General to issue a letter of filing under section 352-e and his power to investigate under section 354 are separate and discrete *(Matter of Greenthal & Co. v Lefkowitz,* 32 NY2d 457). In the former instance the Attorney-General performs a duty specifically enjoined upon him by law. His acceptance of an offering statement for filing does not signify approval. He may, but is not required to, inquire into the truth, accuracy and fullness of the disclosures made *(Matter of Whalen v Lefkowitz,* 36 NY2d 75; *Matter of Greenthal & Co. v Lefkowitz, supra; Matter of 160 West 87th St. Corp. v Lefkowitz,* 50 AD2d 732). However, when he acts under section 354 his function is substantially different. The purpose of the Act is remedial. It cloaks the Attorney-General with power to examine into all kinds of fraud incident to the sale of securities and commodities and to seek to enjoin such acts *(People v Federated Radio Corp.,* 244 NY 33; *Matter of Ottinger v State Civil Serv. Comm.,* 240 NY 435).

■ His determination to commence the proceeding and his conduct of it thereafter is not subject to judicial review *(People v Bunge Corp.,* 25 NY2d 91; *Schumann v 250 Tenants Corp.,* 65 Misc 2d 253, *supra)*. The only issue which is subject to judicial scrutiny is whether a sufficient factual showing has been made to warrant issuance of the order *(Matter of Attorney-General [American Research Council],* 10 NY2d 108). It follows that the proof necessary to order the offering plan filed differed considerably from

the proof necessary to vacate the ex parte order of January 26 which authorized an investigation into the truth, accuracy and completeness of the offering plan. Thus, the judgment ordering the filing of the offering plan and directing the Attorney-General to issue a letter to that effect could not and did not have the effect of vacating the ex parte order of January 26. That can be accomplished only by a holding that the proof offered in support of that order was insufficient to warrant its issuance. That issue is now before Special Term. It will be there decided.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (KATZ, J.), entered June 25, 1981, is affirmed, without costs.

SANDLER, J. P., SULLIVAN, ROSS and CARRO, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on June 25, 1981, unanimously affirmed, without costs and without disbursements.