OPINION OF THE COURT
Chief Judge Cooke.
 The mentally ill, whether in a State institution or previously institutionalized and now homeless in New York City, are entitled to a declaration of their rights as against the State. Their claims do not present a nonjusticiable controversy merely because the activity contemplated on the State’s part may be complex and rife with the exercise of discretion. Rather, the judiciary is empowered *531 to declare the individual rights in all such cases, even if the ultimate determination is that the individual has no rights. Moreover, if a statutory directive is mandatory, not precatory, it is within the courts’ competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature and, if it has not, to direct that the agency proceed forthwith to do so.
I
These two actions, each seeking declaratory relief and mandamus, were initiated by persons treated for mental illness in State institutions, claiming that their constitutional and statutory rights have been violated by the various defendants. The essence of their demands is that they are entitled to be released into the community under a program that will ensure continued treatment and adequate housing. The courts below unanimously dismissed each complaint on the ground that the controversies presented were nonjusticiable because their resolution would involve an excessive entanglement of the courts with the executive and legislative branches. This court now reverses. The background details of each action are briefly outlined, the facts being taken from the allegations in the complaints which, in reviewing these motions to dismiss, are taken as true (see Sanders v Winship, 57 NY2d 391, 394).
Klostermann v Cuomo
Plaintiffs are nine persons suing individually and on behalf of all others similarly situated. Each was treated in a State psychiatric hospital and discharged as part of the State’s policy to release patients to less restrictive, community-based residences. Each plaintiff became one of the homeless wandering the streets of New York City. Efforts to receive assistance from State and municipal agencies were unavailing or, at best, resulted in only minimal, periodic assistance.
Plaintiffs contend that they are entitled to appropriate residential placement, supervision, and care, including follow-ups to verify that their placement remains appropriate. They presented their claims in 11 causes of action. Citing the Fifth, Eighth, and Fourteenth Amendments to *532 the United States Constitution, plaintiffs asserted a violation of their rights to receive treatment, including transitional care and aftercare upon discharge, in the least restrictive environment and to personal security and freedom from harm. Plaintiffs also asserted a denial of equal protection under the law because others similarly situated, when released, have been provided with the services that plaintiffs have not received. Plaintiffs also pleaded that the State’s failure to provide the desired services violates various Federal statutes as well as a common-law duty to provide State hospital patients with reasonable care and to protect them from reasonably foreseeable harm.
The crux of plaintiffs’ complaint is an asserted right under State law to receive residential placement, supervision, and care upon release from a State institution. Their claims are grounded in the provisions of subdivisions (f) through (h) of section 29.15 of the Mental Hygiene Law, which prescribe certain acts that must be undertaken when a patient in a State psychiatric institution is to be discharged or conditionally released into the community.[1] *533 Summarized, the statute requires that a “written service plan” be prepared for each patient before his or her release. At a minimum, the plan must set forth what will be required by the patient upon discharge or conditional release, specifically recommend the type of residence in which the client should live, and list the services available at that residence as well as organizations and facilities in the area which are available to provide services in accordance with the identified needs of the patient. Lastly, the director of any department facility must create, implement, and monitor a program to ensure that a patient is living in an adequate facility and is receiving the services he or she needs.
Plaintiffs’ prayer for relief sought class certification and certain substantive remedies. They asked for a declaration that defendants have violated Federal and State law by their failure to comply with section 29.15 and by failing to provide treatment under the least restrictive conditions suitable to plaintiffs’ needs. Plaintiffs also asked for an order directing defendants “to develop and implement a plan with all due speed which will provide sufficient community-based residential facilities for plaintiffs and members of the class they represent.” Plaintiffs also requested damages.
Defendants did not answer but, instead, moved to dismiss on the grounds that the court lacked subject matter jurisdiction and the complaint failed to state a cause of action (CPLR 3211, subd [a], pars 2, 7). Their jurisdictional argument was founded on the position that treating the mentally ill essentially involves questions of allocating resources, matters that are within the competence of the executive and legislative branches and that should be guarded from judicial intervention.
Special Term granted the motion, holding that the controversy was nonjusticiable. It found that mandamus would be inappropriate because it would require the court to oversee a long series of continuous acts. The judge also *534 noted that mandamus is particularly inappropriate when the relevant statutory duty involves the exercise of judgment and discretion. Having determined that no compulsory order could be issued because the matter was nonjusticiable, the court declined to consider the request for declaratory judgment because such relief would be futile in light of the unavailability of any further remedies to enforce any rights declared. The court summarily dismissed plaintiffs’ constitutional and Federal claims on the same ground of nonjusticiability.
On appeal, the Appellate Division affirmed for the reasons stated in the decision of Special Term. Leave to appeal was granted by this court.
Joanne S. v Carey
Plaintiffs in this action seek essentially the same relief as those in Klostermann, albeit from a different starting point. Suing individually and on behalf of all others similarly situated, plaintiffs are 11 patients hospitalized at Manhattan Psychiatric Hospital who have each been found ready to return to the community but have not been discharged or released because of the lack of adequate residential placements. At the time the complaint was drafted in August, 1982, the individual plaintiffs had been in this predicament for as long as a year.
In addition to class certification, plaintiffs sought declarations of their rights similar to those requested by the plaintiffs in Klostermann. They also sought orders directing defendants to release them into community treatment settings and, generally, to “develop and provide sufficient community treatment settings to provide needed shelter and aftercare to the remainder of the plaintiff class”.
Defendants, without answering, moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a cause of action. Special Term summarily granted the motion, ruling that the matter was nonjusticiable and referring to Supreme Court’s decision in Klostermann. The Appellate Division unanimously affirmed, citing its own decision in Klostermann. This court granted leave to appeal.
*535 II
On this appeal, the court is asked to consider whether the complaints present claims that lie within the judiciary’s power to review, i.e., whether the controversy is a justiciable one. It is concluded that the courts below erred in holding that they could not properly consider the issues raised by plaintiffs. It should be emphasized that, in reaching this conclusion, this court does not express any opinion as to the merits of plaintiffs’ causes of action. Their ultimate success on the substantive questions must await further proceedings.
Plaintiffs seek two remedies — declaratory judgment and mandamus. Defendants contend that no relief can be afforded to plaintiffs because fashioning any judgment would necessarily involve the allocation of resources and entangle the courts in the decision-making function of the executive and legislative branches. In making their argument, defendants fail to distinguish between a court’s imposition of its own policy determination upon its governmental partners and its mere declaration and enforcement of the individual’s rights that have already been conferred by the other branches of government.
The difficulty in determining what is “justiciable” arises in part from the nebulous quality of that concept. It is a far-reaching term that incorporates, among other things, political questions and mootness (see Jones v Beame, 45 NY2d 402, 408). “Even within a particular category of justiciability, as with political questions, the line separating the justiciable from the nonjusticiable has been subtle, and with the passage of time, it might be said, has even moved (see, e.g., Baker v Carr, 369 US 186, 208-237)” (id.).
The paramount concern is that the judiciary not undertake tasks that the other branches are better suited to perform. Acquiring data and applying expert advice to formulate broad programs cannot be economically done by the courts. This restraint is particularly important when the creation of a program entails selecting among competing and equally meritorious approaches so as to allocate scarce resources. Generally, the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the legislative and *536 executive branches of our tripartite system (see Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992).
This approach was exemplified in the companion cases of Jones v Beame and Bowen v State Bd. of Social Welfare (45 NY2d 402, supra). Bowen involved a challenge by the City of Long Beach to the State’s policy of deinstitutionalizing the care of the mentally ill, the same program that is now at issue in the present appeals. This court ruled that the matter was not one properly presentable in a judicial forum, in part because the plaintiffs there sought to litigate the wisdom of the State’s policy, which involved the conflicting views of experts as to what constituted the better course of treatment — institutions or private settings in the community (id., at pp 407-408). In rejecting the suits, the court was careful to note that it was refusing only to become ensnarled in an attempt to weigh and select policies, but not to review the implementation of those policies on a case-by-case basis: “In short, resolution of the ultimate issues rests on policy, and reference to violations of applicable statutes is irrelevant except in recognizedseparately litigable matters brought to enforce them” (id., at p 409 [emphasis added]).
The instant cases raise the precise situation that was contemplated in Bowen. Plaintiffs are individuals who claim that they hold certain rights under the pertinent statutes and are seeking to enforce those rights.[2] In effect, they assert that the Legislature has mandated certain programs and that the executive branch has failed to deliver the services. The appropriate forum to determine the respective rights and obligations of the parties is in the judicial branch.
Defendants contend that the controversy is nonjusticiable because any adjudication in support of plaintiffs will necessarily require the expenditure of funds and a concom *537 itant allocation of resources. Defendants have set forth in affidavits all of their efforts to care for the psychiatric patients released from State hospitals, and argue that there simply is not enough money to provide the services that plaintiffs assert are due them. Although defendants’ attempts are commendable, they are irrelevant. “[T]he ‘[c]ontinuing failure to provide suitable and adequate treatment cannot be justified by lack of staff or facilities’ ” (Matter of Kesselbrenner v Anonymous, 33 NY2d 161, 168; accord Matter of Lavette M., 35 NY2d 136, 142; Matter of Ellery C., 32 NY2d 588, 591-592). This defense is particularly unconvincing when uttered in response to a claim that existing conditions violate an individual’s constitutional rights (see Frug, Judicial Power of the Purse, 126 U of Pa L Rev 715, 725, and n 71).
In sum, there is nothing inherent in plaintiffs’ attempts to seek a declaration and enforcement of their rights that renders the controversy nonjusticiable. They do not wish to controvert the wisdom of any program. Instead, they ask only that the program be effected in the manner that it was legislated.
Ill
As noted, plaintiffs have sought declaratory judgment and mandamus. Defendants contend that, even if the controversy is justiciable, these remedies are not available. The crux of defendants’ argument is that the courts cannot draft any coercive order or judgment to enforce plaintiffs’ rights, if any, so that mandamus is inappropriate and declaratory relief is meaningless because it could never be followed by an executory decree. This misapprehends the scope of mandamus and the nature of declaratory judgments.
Mandamus, of course, is an extraordinary remedy that, by definition, is available only in limited circumstances. Declaratory relief, on the other hand, “‘is a remedy sui generis and escapes both the substantive objections and procedural limitations of special writs and extraordinary remedies’ (Borchard, Declaratory Judgments, 1939, 9 Bklyn L Rev, at p 14)” (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147, cert den _ US _, 104 S Ct 486).[3]
*538 One aspect of the distinctive nature of an action for declaratory judgment is that not only is the ultimate decree noncoercive, but the rights declared need not be amenable to enforcement by an executory decree in a subsequent action. The belief that an executory order is required arises from the misconception that the judicial power is necessarily a coercive one. “The coercion or compulsion exerted by a judgment, while essential to its effectiveness, is not due to a coercive order to act or refrain, but to the very existence of the judgment, as a determination of legal rights. Many judgments are incapable of, and do not require, physical execution. They irrevocably, however, fix a legal relation or status placed in issue, and that is all that the judgment is expected to do. It is this determination which makes it res judicata” (Borchard, Declaratory Judgments [2d ed], p 12).
“While ordinarily a case or judicial controversy results in a judgment requiring award of process of execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function” (Fidelity Nat. Bank v Swope, 274 US 123,132). “[I]t is not necessary, in order to constitute a judicial judgment that there should be both a determination of the rights of the litigants and also power to issue formal execution to carry the judgment into effect, in the way that judgments for money or for the possession of land usually are enforced. A judgment is sometimes regarded as properly enforceable through the executive departments instead of through an award of execution by this Court, where the effect of the judgment is to establish the duty of the department to enforce it” (Old Colony Trust Co. v Commissioner of Internal Revenue, 279 US 716, 725).
The primary purpose of declaratory judgments is to adjudicate the parties’ rights before a “wrong” actually occurs in the hope that later litigation will be unnecessary (see Matter of Morgenthau v Erlbaum, 59 NY2d 143, 148, supra, and authorities cited there). The action, therefore, contemplates that the parties will voluntarily comply with *539 the court’s order. It is anomalous to contend that such an action should not be permitted because it may be necessary at some future date to coerce one party who has refused to act in accordance with the judicial determination. Indeed, defendants’ argument in this regard is especially offensive in its implication that they will deem themselves free to disregard their judicially declared obligations should a court rule in favor of plaintiffs.
Thus, the ultimate availability of a coercive order to enforce adjudicated rights is not a prerequisite to a court’s entertaining an action for declaratory judgment. In any event, this objection is without merit because, in the present cases, if plaintiffs’ claims are borne out, a coercive order may be drafted by the courts.
Traditionally, “[m]andamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief sought” (Matter of Legal Aid Soc. v Scheinman, 53 NY2d 12, 16). The long-established law is that “ 6[w]hile a mandamus is an appropriate remedy to enforce the performance of a ministerial duty, it is well settled that it will not be awarded to compel an act in respect to which the officer may exercise judgment or discretion’ ” (Matter of Gimprich v Board of Educ., 306 NY 401, 406, quoting People ex rel. Hammond v Leonard, 74 NY 443, 445; but cf. Scheinman, supra, at p 16, n 1).
Defendants argue that preparing written service plans and creating follow-up programs are activities replete with decisions involving the exercise of judgment or discretion. This is inarguably true. What must be distinguished, however, are those acts the exercise of which is discretionary from those acts which are mandatory but are executed through means that are discretionary. For example, the decision to prosecute a suit is a matter left to the public officer’s judgment and, therefore, cannot be compelled (see People ex rel. Hammond v Leonard, 74 NY 443, supra). In contrast, when a town council is directed by statute to designate up to four newspapers having the largest circulation for the purpose of receiving city advertising, the court can compel the council to execute its statutory duty, but it may not direct the particular papers to be named (see People ex rel. Francis v Common Council, 78 NY 33).
*540 What has been somewhat lost from view is this function of mandamus to compel acts that officials are duty-bound to perform, regardless of whether they may exercise their discretion in doing so. “[T]he writ of mandamus * * * may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner * * * This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a manner as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be.” (People ex rel. Francis v Common Council, supra, at p 39 [emphasis added].)
“The general principle [is] that mandamus will lie against an administrative officer only to compel him to perform a legal duty, and not to direct how he shall perform that duty” (People ex rel. Schau v McWilliams, 185 NY 92, 100). This rule was recently given effect in Matter of Gonkjur Assoc. v Abrams (57 NY2d 853, affg on opn below 82 AD2d 683, 688), when this court held that the Attorney-General could be directed to issue a letter stating that a co-operative apartment prospectus had been filed or was deficient, although the order could not direct the Attorney-General to approve the plan (accord Matter of Utica Cheese v Barber, 49 NY2d 1028 [Commissioner of Agriculture directed to hold hearing and render determination on milk dealer’s license application within 90 days]; Matter of Stuart & Stuart v State Liq. Auth., 29 AD2d 176 [agency can be compelled to decide license applications but not to grant the licenses]; see Matter of Thomas v Wells, 288 NY 155,157; Southern Leasing Co. v Ludwig, 217 NY 100, 105).
*541 In conclusion, plaintiffs have properly petitioned the courts for a declaration of their rights, whether derived from the Federal or State Constitutions, statutes, or regulations. Moreover, to the extent that plaintiffs can establish that defendants are not satisfying nondiscretionary obligations to perform certain functions, they are entitled to orders directing defendants to discharge those duties. The activity that the courts must be careful to avoid is the fashioning of orders or judgments that go beyond any mandatory directives of existing statutes and regulations and intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches.
IV
Accordingly, in each case, the order of the Appellate Division should be reversed, with costs, and defendants’ motion to dismiss the complaint should be denied.
Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur.
In each case: Order reversed, etc.

. Subdivisions (f) through (h) of section 29.15 of the Mental Hygiene Law provide:
“(f) The discharge or conditional release of all clients at developmental centers, patients at psychiatric centers or patients at psychiatric inpatient services subject to licensure by the office of mental health shall be in accordance with a written service plan prepared by staff familiar with the case history of the client or patient to be discharged or conditionally released and in cooperation with appropriate social services officials and directors of local governmental units. In causing such plan to be prepared, the director of the facility shall take steps to assure that the patient to be discharged or conditionally released is interviewed, provided an opportunity to actively participate in the development of such plan and advised of whatever services might be available to him through the mental health information service.
“(g) A written service plan prepared pursuant to this section shall include, but shall not be limited to, the following:
“1. a statement of the patient’s need, if any, for supervision, medication, aftercare services, and assistance in finding employment following discharge or conditional release, and
“2. a specific recommendation of the type of residence in which the patient is to live and a listing of the services available to the patient in such residence.
“3. A listing of organizations, facilities, including those of the department, and individuals who are available to provide services in accordance with the identified needs of the patient.
“4. The notification of the appropriate school district and the committee on the handicapped regarding the proposed discharge or release of a patient under twenty-one years of age, consistent with all applicable federal and state laws relating to confidentiality of such information.
“(h) It shall also be the responsibility of the director of any department facility from which a client or patient has been discharged or conditionally released, in collaboration, when appropriate, with appropriate social services officials and directors of local governmental units, to prepare, to cause to be implemented, and to monitor a comprehensive program designed:
“1. to determine whether the residence in which such client or patient is living, is *533 adequate and appropriate for the needs of such patient or client;
“2. to verify that such patient or client is receiving the services specified in such patient’s or client’s written service plan; and
“3. to recommend, and to take steps to assure the provision of, any additional services.”

. Plaintiffs are also attempting to pursue their claims as class actions. This, conceivably, may create a situation similar to that in Bowen, requiring the court to consider broad policy matters rather than their application to individuals. Whether this difficulty will arise cannot now be determined as no class has been described and certified. Accordingly, this court expresses no opinion on the suitability of the present litigation to be pursued as a class action.
Similarly, inasmuch as none of the lower courts ruled on defendants’ motions insofar as they seek dismissals on other grounds, this court does not express any opinion on those issues.

. This court has recently reviewed the distinction between extraordinary writs and *538 declaratory judgments in the context of requesting prohibition to review an interlocutory order in a criminal trial (Matter of Morgenthau v Erlbaum, 59 NY2d 143,147-149). Suffice it here to say that the discussion in Erlbaum is equally applicable to the present case.