CATHERINE M. HAGAN, as Committee of the Property and Person of THOMAS D. DEANE, an Incompetent, Respondent, v JESSIE NIXON, as Director of Capital District Psychiatric Center, et al., Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS D. DEANE, Respondent, v ARTHUR WEBB, as Commissioner of the Office of Mental Retardation and Developmental Disabilities, Appellant.

Third Department, July 18, 1985

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Leslie B. Neustadt* and *Peter H. Schiff* of counsel), for appellants.

*Eugene Keeler* for Catherine M. Hagan, respondent.

*Michael O'Brien, Bruce Dix* and *David LeVine* for Mental Health Information Services, respondent.

**OPINION OF THE COURT**

KANE, J. P.

On November 21, 1984, Catherine M. Hagan was appointed committee of the person and property of Thomas David Deane, her 24-year-old grandson who is developmentally and psychiatrically disabled. Hagan lives in the Village of Catskill, Greene County, where she raised Deane from his birth on February 18, 1960 to age 18. At that time, due to Hagan's advanced age and inability to control Deane, he was placed in a group home in Dutchess County, not far from Hagan's residence. For the next six years, Deane resided in facilities operated under the auspices of both the Office of Mental Health (OMH) and the Office of Mental Retardation and Developmental Disabilities (OMRDD). On June 7, 1984, Deane was admitted to Capital District Psychiatric Center (CDPC), an OMH facility in the City of Albany where he had previously been a patient. Immediately prior to his June 1984 admission to CDPC, Deane had resided in a family care home operated by O.D. Heck Developmental Center (Heck), an OMRDD facility in the City of Schenectady. During his last stay at CDPC, Deane pulled a vending machine down upon himself and thereby injured his leg, for which he was hospitalized at Albany Medical Center Hospital.

While Deane was in Albany Medical Center, a meeting was held between Hagan and representatives of CDPC, Heck and the Mental Health Information Services (MHIS), which provides legal services and assistance to mentally retarded and developmentally disabled persons admitted to mental health facilities. At the meeting, it was decided that CDPC would request that Deane be returned to a program under OMRDD auspices. Pursuant to a cooperative agreement between OMH and OMRDD dated March 1982, Heck was required to offer a suitable treatment program for Deane within 15 days of such a request. Accordingly, CDPC was informed on October 25, 1984 that because of Deane's multiple disabilities, Heck's staff had found that Deane would be best served upon his discharge from Al-

bany Medical Center by OMRDD's regional in-patient program at Rome Developmental Center (Rome) in the City of Rome. Thus, CDPC informed Hagan and other interested parties that it would discharge Deane as of January 1, 1985.

By an order to show cause and simultaneous service of a summons and complaint, Hagan began an action seeking to restrain and enjoin CDPC, Heck, OMH and OMRDD (hereinafter defendants) from discharging Deane from CDPC and transferring him to Rome. Hagan also sought a declaratory judgment that Deane had a right to treatment at Heck. She claimed that Deane's placement in Rome (1) violated his rights under "both Federal and State law and State regulations", and (2) would be detrimental to his treatment since it would prevent her from visiting him and participating in his treatment plan. MHIS intervened by permission of Special Term and alleged, *inter alia,* that although it was aware that Heck had refused to admit Deane because it claimed it was unable to provide appropriate services to a mentally ill, mentally retarded, behaviorally difficult person, Heck had provided services to at least three other similarly situated individuals. MHIS also alleged that it would be an emotional and financial hardship for Hagan to visit Deane at Rome and that the lack of such visits would result in emotional harm to Deane. Contending that CDPC was inappropriate and less desirable than either Heck or Rome, MHIS opposed Hagan's request for injunctive relief and requested that an independent psychologist be appointed to determine if Heck was capable of providing appropriate services to Deane. By affidavits, defendants opposed Hagan's request for a preliminary injunction and MHIS' request for an independent psychological evaluation. Defendants alleged, *inter alia,* that it was the considered judgment of experts to OMRDD, the agency determined to be the appropriate treatment agency for Deane, that Rome's Multiple Disabled Unit (MDU) was the appropriate treatment center for him.

Despite the fact that the hearing was only for a preliminary injunction, and an answer had not as yet been served by defendants, Special Term decided the underlying declaratory judgment action. By order dated and entered February 20, 1985, Special Term determined, without reaching any of the other issues raised in the complaint, that the Mental Hygiene Law required defendants to treat Deane as close to his home community as possible and that regulations of the Department of Mental Hygiene declared that Greene County, Deane's county of origin, would be served by Heck. Therefore, Special Term or-

dered OMRDD to comply with 14 NYCRR 56.3 as to the designated institutional placement of Deane in connection with further treatment necessary for his care. On the morning of February 21, 1985, CDPC personnel brought Deane to Heck. On that same afternoon, defendants served their notice of appeal from Special Term's order, thereby staying enforcement thereof pending appeal pursuant to CPLR 5519 (a) (1). That evening, Deane stayed at a halfway house operated by Heck in the City of Troy. On February 22, 1985, Deane was transported to Rome pursuant to authorization by the Commissioner of OMRDD.

On February 26, 1985, MHIS petitioned for a writ of habeas corpus. In its petition, MHIS alleged that Deane was brought to Heck on February 21, 1985 pursuant to Special Term's February 20, 1985 order and was at that time a voluntary client of Heck pursuant to Mental Hygiene Law § 15.13. MHIS also alleged that Deane's transfer to Rome was in violation of 14 NCYRR part 17 since (1) MHIS was not given advance notice of either the request for transfer or of the transfer order, (2) Deane's written consent had not been obtained, and (3) the required statement that there were no court proceedings pending was either not made or, if made, was done falsely. A writ was issued on February 27, 1985 ordering the Commissioner of OMRDD to present Deane together with the reasons for his retention at Rome.

The transcript of the habeas corpus proceeding reveals that Trial Term, after talking privately with Deane and after reviewing all the affidavits and the stipulation of facts made by the parties, concluded that Deane was an inmate or resident of Heck when he was transferred to Rome. Accordingly, Trial Term found that Deane was transferred without notice being given to Hagan as Deane's committee, without a statement that no court proceedings were outstanding and without Deane's consent; thus, Trial Term concluded that Deane should be returned to Heck pending a determination of the appeal of the original order requiring compliance with 14 NYCRR 56.3.

OMRDD appealed Trial Term's judgment in the habeas corpus proceeding and also proposed three amendments to the transcript therein pursuant to CPLR 5525 (c). Trial Term disallowed two of the proposed amendments and allowed the third, which merely corrected a typographical error. OMRDD appealed the resulting order. Hagan and MHIS moved this court to vacate the statutory stay pursuant to CPLR 5519. This court, on March 27, 1985, denied said motions and ordered the appeals in both the declaratory judgment action and habeas corpus proceeding to be heard together and perfected on a joint record and briefs.

We first consider Special Term's order entered February 20, 1985 in the action for an injunction and declaratory judgment.

██ Special Term found that the underlying issue in the injunction action was whether defendants had the right to transfer Deane to Rome rather than to Heck, and it thus treated Hagan's request for a preliminary injunction as seeking a declaratory judgment. Special Term then determined that the Mental Hygiene Law required that Deane be treated as close to his home community as possible and that the regulations of the Department of Mental Hygiene declare that Deane's county of origin, Greene County, is to be served by Heck. Defendants contend that Hagan has no right to a judicial determination that, as a matter of law, Deane be treated at Heck and that a declaratory judgment is not the proper vehicle by which to review defendants' actions. In our opinion, a declaratory judgment is not an improper vehicle by which to review defendants' actions; however, we find that on the instant record, Special Term's declaration of Deane's rights was incorrect.

In *Klostermann v Cuomo* (61 NY2d 525, 530-531), the Court of Appeals held that: "The mentally ill * * * in a State institution * * * are entitled to a declaration of their rights as against the State. Their claims do not present a nonjusticiable controversy merely because the activity contemplated on the State's part may be complex and rife with the exercise of discretion. Rather, the judiciary is empowered to declare the individual rights in all such cases, even if the ultimate determination is that the individual has no rights". (*See also, Matter of Bezio v New York State Off. of Mental Retardation & Developmental Disabilities,* 62 NY2d 921.) In *Bezio,* the Court of Appeals, relying on *Klostermann,* stated that, to the extent that the petitioners sought to enforce rights under Mental Hygiene Law § 15.23 as distinct from litigating the wisdom of the medical policy underlying the treatment they were receiving, they may be able to state a cause of action even though the petition asked for more relief than could be granted under the particular section (*Matter of Bezio v New York State Off. of Mental Retardation & Developmental Disabilities, supra,* at pp 923-924). In *Klostermann,* where there were two actions initiated by persons treated for mental illness in State institutions seeking declaratory relief and mandamus, the plaintiffs claimed that they held certain rights under Mental Hygiene Law § 29.15 (f), (g) and (h) (*Klostermann v Cuomo, supra,* at pp 531-532, 536). The Court of Appeals found that, since the plaintiffs were asserting that the Legislature had mandated certain programs and that the executive branch had

failed to deliver the services, they had properly petitioned the courts for a declaration of their rights (*supra,* at pp 536, 541).

The action herein is analogous. Thus, Hagan, as Deane's committee, properly sought a declaration of his rights as did the plaintiffs in *Klostermann* (*supra*). However, we find that Special Term incorrectly decided that the Mental Hygiene Law *requires* that defendants treat Deane as close to his home community as possible and that the Department of Mental Hygiene regulations *declare* that Deane be served at Heck. In *Klostermann,* the Court of Appeals held that: "if a statutory directive is mandatory, not precatory, it is within the courts' competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature and, if it has not, to direct that the agency proceed forthwith to do so" (*Klostermann v Cuomo, supra,* at p 531). Mental Hygiene Law § 13.01 is a "declaration of policy" which sets forth a statement of goals regarding meeting the needs of the mentally retarded and developmentally disabled. As such, it cannot be said that it is a mandatory statutory directive. Likewise, although 14 NYCRR 56.3 (*l*) designates Heck as the developmental center to which mentally disabled persons from Greene County will be admitted, it cannot be said that that regulation is mandatory in light of 14 NYCRR 56.4, which provides that where it is desired to admit a person to a State school outside the district in which he resides, an application stating the reasons for such admission shall be made to the Commissioner of OMRDD. In the instant case, the Director of Heck requested that Deane be admitted to Rome's MDU and such admission was authorized by the Commissioner. Therefore, Special Term improperly ordered OMRDD to comply with 14 NYCRR 56.3 as to the designated placement of Deane.

Consequently, the matter must be remitted to Special Term to allow defendants an opportunity to submit an answer with respect to the other issues raised in the complaint and for possible conversion to a CPLR article 78 proceeding, if deemed appropriate. We note that the Attorney-General, with admirable candor, has conceded that upon remittal, defendants will "not object to an independent psychological evaluation of Deane".

We now turn to consideration of the habeas corpus proceeding. In this regard, since MHIS did not seek Deane's discharge from OMRDD but merely his transfer from Rome to Heck, we find habeas corpus to be an inappropriate remedy (*see,* CPLR 7010). Accordingly, Trial Term must be reversed and the proceeding dismissed.

Although habeas corpus does not lie, we take this opportunity to express our dismay with the precipitous transfer of Deane. In transferring Deane, as Trial Term aptly observed, the authorities at Heck clearly failed to comply with applicable regulations dealing with the transfer of patients (14 NYCRR part 17).

Having dismissed the habeas corpus proceeding, the appeal from the order settling the transcript becomes academic.

LEVINE, J. (concurring in part and dissenting in part). I respectfully disagree with so much of the majority's decision as, *sua sponte,* dismisses the habeas corpus proceeding, commenced on Thomas David Deane's behalf, on the ground that the petition therein does not seek Deane's discharge from State confinement, but only his transfer from one facility to another. As the majority correctly holds, Deane's precipitous transfer from the O.D. Heck Developmental Center to the Rome Developmental Center was in violation of respondent's own regulations dealing with the transfer of patients (14 NYCRR part 17). This violation is not the subject of any of the causes of action in the companion proceeding, but it does constitute an additional basis for upsetting the determination to transfer Deane's confinement. Accordingly, the appropriate disposition with respect to the habeas corpus proceeding would be to convert it to a CPLR article 78 proceeding and remit it to Special Term for appropriate disposition (CPLR 103 [c]; *see also, People ex rel. Perrello v Smith,* 47 AD2d 106, 110).

MAIN, CASEY and WEISS, JJ., concur with KANE, J. P.; LEVINE, J., concurs in part and dissents in part in an opinion.

Order entered February 20, 1985 reversed, on the law, without costs, and matter remitted to Special Term for further proceedings not inconsistent herewith with leave granted to defendants to serve an answer within 20 days of the entry of the order herein.

Judgment entered February 28, 1985 reversed, on the law, without costs, and writ dismissed.

Appeal from order entered April 8, 1985 dismissed, as academic, without costs.