In the Matter of LONG ISLAND LIGHTING COMPANY, Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent.

Third Department, February 16, 1989

**APPEARANCES OF COUNSEL**

*Victor A. Staffieri (Debra Winthrop Pollack* and *Brian D. Bornstein* of counsel), for appellant.

*Robert Abrams, Attorney-General (Michael J. Moore, Peter H. Schiff* and *Douglas H. Ward* of counsel), for respondent.

**OPINION OF THE COURT**

Weiss, J.

Petitioner operates, *inter alia,* four electric generating facilities in Nassau and Suffolk Counties. In July 1986, petitioner submitted two applications to respondent to continue and/or reauthorize special limitations for the use of a higher sulfur content fuel in the various facilities. Pursuant to the State Acid Deposition Control Act (hereinafter SADCA) *(see,* ECL 19-0901 *et seq.,* eff Aug. 6, 1984), respondent previously promulgated specific sulfur-in-fuel limitations for each of petitioner's facilities *(see,* 6 NYCRR 225-1.2 [c], [e]). These regulations, which went into effect in January 1986, authorized a higher sulfur content fuel, but only for a limited duration. Currently, each facility is restricted to the use of more expensive, lower sulfur content fuel *(see,* 6 NYCRR 225-1.2 [d]). By letter dated December 11, 1986, respondent's former Commissioner denied petitioner's request to amend the pertinent regulations. Petitioner commenced this CPLR article 78 proceeding to annul respondent's denial and to compel respondent to conduct appropriate hearings on its applications. Supreme Court dismissed the petition and this appeal ensued.

■ Petitioner's principal objection on appeal is that respon-

dent's "peremptory" refusal to entertain its applications effectively deprived it of due process of law. Specifically, petitioner complains that respondent disregarded the procedures set forth in ECL article 70, known as the Uniform Procedures Act (hereinafter UPA) (ECL 70-0101 *et seq.),* by denying the applications without a thorough review and hearing process *(see,* ECL 70-0109, 70-0119). Respondent counters that petitioner's applications do not constitute applications for a "permit" within the ambit of UPA, and characterizes the applications as requests to initiate a rule-making change. We accept the latter premise and are to affirm Supreme Court's judgment.

SADCA constitutes the first comprehensive State legislative response to the perplexing· environmental problem commonly referred to as "acid rain" *(see,* Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 19-0901 [1989 Pocket Part], at 36). The legislation outlines a program and procedure for controlling the emission of "acid deposition precursors * * * from sources within the state" (L 1984, ch 972, § 1, as amended by L 1984, ch 973, § 5). Petitioner's facilities emit sulfur dioxide, an "acid deposition precursor" *(see,* ECL 19-0903 [2]), and are thus subject to regulation under SADCA. As indicated, following the enactment of SADCA, respondent promulgated interim regulations prohibiting petitioner's use of fuel beyond certain sulfur content levels (6 NYCRR 225-1.2). Notably, respondent retained authority to continue or reauthorize "special limitations" allowing specific facilities to utilize fuel with a sulfur content in excess of established limits *(see,* ECL 19-0919 [1] [b]; 6 NYCRR 225-1.6 [c]). This is precisely the relief petitioner seeks. The question raised is whether the applications trigger the procedural protections attendant a "permit" application under UPA, or constitute requests to initiate a regulatory amendment.

UPA provides uniform procedures for processing permit applications under respondent's major regulatory programs *(see,* ECL 70-0101 *et seq.),* including air pollution control programs *(see,* ECL 70-0107 [2], [3] [g]). UPA broadly defines "permit" as "any permit, certificate, license, or other form of *departmental approval"* (ECL 70-0105 [4] [emphasis supplied]). Petitioner reasons that its requests for regulatory amendments would require "departmental approval" and thus encompass the UPA procedural format. While perhaps literally accurate, we cannot accept petitioner's thesis. Applications for

a permit to *construct or operate* an electricity generating facility are governed by UPA *(see,* 6 NYCRR 621.2 [g]). The subject regulations, however, serve only to limit the percentage of sulfur in fuel utilized, and do not otherwise impair petitioner's operational authority. As respondent correctly notes, petitioner has continued to operate its facilities, albeit under more stringent fuel use limitations.

The relevant SADCA provisions support this conclusion. Specifically, respondent is required to "promulgate such *rules and regulations* as are necessary to effectuate [SADCA]" (ECL 19-0907 [5] [emphasis supplied]). A "special limitation" is defined as extending "a special fuel use limitation for a specific facility * * * promulgated by the department in *rules and regulations"* (ECL 19-0903 [16] [emphasis supplied]). The SADCA language is clear and expressly anticipates the extension of special fuel allowances only through formal rule-making procedures *(see,* 6 NYCRR 225-1.6 [c]).

As Supreme Court accurately noted, respondent is under no legal obligation to initiate a rule change simply at the request of a regulated party. Notably, the Legislature expressly provided that SADCA should not "be construed to require or prohibit" respondent from providing special fuel allowances (ECL 19-0919 [1]). The matter is left to the discretion of respondent. As such, relief in the nature of mandamus to compel is inappropriate *(see, Klostermann v Cuomo,* 61 NY2d 525; *compare, Matter of Waterside Assocs. v New York State Dept. of Envtl. Conservation,* 72 NY2d 1009).

■ We are not persuaded by petitioner's further contention that the one-page, December 11, 1986 denial letter fails to provide an adequate basis for judicial review of respondent's determination. Respondent's denial was expressly premised on a projected increase in electricity generated at petitioner's facilities, with a concomitant increase in sulfur dioxide emissions, a result conflicting with respondent's sulfur deposition control program. The denial was adequately explained. Moreover, the record provides an adequate evidentiary basis for respondent's present refusal to approve higher sulfur limits at petitioner's facilities.

KANE, J. P., CASEY, LEVINE and MERCURE, JJ., concur.

Judgment affirmed, without costs.