OPINION OF THE COURT
William H. Keniry, J.
This case presents a situation which occurs rather frequently in our society but over which there has been only limited judicial review. When an individual or family suffers *174 great personal tragedy, members of the community, often instinctively, respond from the heart to offer financial assistance and other support to ease the burden.
Mei-Ling White, an eight-year-old girl, disappeared on July 21, 1989. After Mei-Ling was reported missing by her parents, a massive search was conducted in the City of Troy, Rensselaer County. Mei-Ling’s body was found four days later in a wooded area some 200 yards from her home. According to police and the coroner, she had been sexually assaulted and murdered. The crime received considerable media coverage. Shortly after her body was found, various newspapers, television stations and radio stations reported that neighbors of the White family, who were concerned that the Whites did not have sufficient money for the funeral and burial of Mei-Ling, had started a fund to collect donations to assist the family. The fund was alternately described by the media as "a funeral fund” and "a memorial fund” and contributors were asked to forward their donations to the Troy Savings Bank, the petitioner herein. The response was overwhelming and in a short time some 742 donors contributed a total of $12,428. The funds were deposited in a savings account in the Troy Savings Bank in the names of Stephen S. White and Tuyet Thruong White, Mei-Ling’s parents.* The professional fees of the funeral parlor and burial plot were donated. The sum of $2,039 was paid out of the account for the remaining funeral and burial expenses of Mei-Ling White, leaving a balance of $10,389.
Concerned about the disposition of the balance remaining in the so-called "Mei-Ling White Fund”, the petitioner, as the stakeholder, initiated this special proceeding seeking a judicial determination as to the disposition of the fund balance. The court, by order to show cause, directed that service of a copy of the order to show cause and petition be made upon Stephen S. White, Tuyet Thruong White, the Attorney-General, each and every identified and known donor and also by publication in an effort to reach anonymous donors and donors who had not provided their addresses. Upon the return date, the attorney for Troy Savings Bank, the Attorney-General and one donor appeared in court in person. Forty-two donors responded by letter or telephone call to the court, petitioner or petitioner’s attorney.
The court has summarized the comments and suggestions of *175 the contributors who responded. Twenty-three expressed the opinion that the remaining funds should go directly to the White family. Three suggested the creation of a memorial fund. Eleven felt that the balance should be donated to established charities that aid or assist children or crime victims. Two donors suggested the creation of a reward fund to find the murderer. Four suggested that the money be placed in a trust fund for the use and benefit of Mei-Ling’s sisters. Two asked that their contributions be returned so that the donors could select the charity of their choice.
The threshold issue for the court’s resolution is whether the donors simply intended to make inter vivas gifts to a needy family which had suffered a tragic loss or whether the donors intended to establish a private trust fund for the funeral and burial of Mei-Ling White which has exhausted its purpose and now has a significant surplus. If the former was intended, it is clear that the funds belong to the White family for whatever private purpose they deem appropriate. If the latter intent is found, then the court is obligated to disburse the surplus to most effectively accomplish the general charitable purposes intended by the contributors.
The record before the court contains scant evidence of what specific plea the 742 donors heeded when they generously opened their hearts and purses to the fund. The fund began as a grassroots effort conceived by neighbors who thought the family was too impoverished to pay for a proper funeral and burial for their slain daughter. The media publicized the endeavor calling the effort both a burial and memorial fund. Newspapers initially reported that an account was set up at Troy Savings Bank for donations which would be used "only for funeral expenses” according to the founder Nancy Frazier (Troy Record, July 27, 1989) and that the fund "to help her parents bury the girl” was started when the parents each said to Mrs. Frazier "We have no money to bury my baby” (Troy Record, July 28, 1989). The fund was described as "[T]he memorial fund for the family of Mei-Ling White” in the August 1, 1989 Albany Times Union, and as "contributions to help the White family to pay for funeral expenses” in the July 28, 1989 Albany Times Union. In addition, the Troy Record stated on August 2, 1989 and August 3, 1989 that "[M]oney above the cost of the funeral is to be given to the family”. The record before the court contains no indication of how the fund was described or characterized in television and radio broadcasts.
*176 The court in deciding this case can glean little assistance from judicial precedent since only three reported opinions in the whole United States have been found which discuss situations at all similar to the subject of this case. None are directly in point to the factual situation presented here.
In this case there is no way for the court to determine, with precision, the individual intent of each and every one of the several hundred donors. A fair number of contributors responded by letter to the court’s invitation to appear in this proceeding and did express certain positions which the court will consider. One donor appeared in person. Of course, expressions of intent made after the fact may not always accurately reflect what the donor intended at the time that he or she acted but such information does provide additional information for the court’s consideration. Over one half of the contributors specifically stated that the excess funds should go directly to the White family. Only two individuals requested that their donations be returned to them and it is heartwarming to know that in each instance the donors do not want the money for themselves but have expressed a desire to donate those funds directly to charities of their choice.
This proceeding is, in essence, a declaratory judgment action wherein the stakeholder is asking the court to adjudicate the disposition of the balance of the fund (CPLR 3001; Klostermann v Cuomo, 61 NY2d 525, 538). Based upon the record now before it, the court declares and finds that the public solicitation of donations to the Mei-Ling White Fund was multimotivated. Based upon the sampling of contributors who appeared in this proceeding, the court concludes that two general purposes were manifest: the creation of a charitable funeral fund which has exhausted its stated purpose with a surplus and the contribution of direct financial assistance to the family of Mei-Ling White. The court in the exercise of its powers and in fulfillment of the expressed intent of the contributors declares that the balance of the Mei-Ling White Fund now on deposit in the petitioner, the Troy Savings Bank, be disbursed as follows:
1. The Troy Savings Bank shall return 83.5% of the contributions of the two donors who appeared by letter and specifically requested that their donations be returned. The donations were in the amounts of $10 and $25. The donors requested the return of their contributions in order to donate the money to charities of their personal choice in memory of Mei-Ling White. The court is not directing the return of the *177 full amount of the two donations since 16.5% of the fund was indeed expended for the funeral and burial expenses of MeiLing White. Counsel for Troy Savings Bank is directed to mail a copy of this decision to each of the said donors so that they will be advised of the reason why their donations were not returned in full;
2. Fifty per cent of the remaining balance in the fund shall be released to Tuyet Thruong White, surviving parent of MeiLing White, to reflect the donative intent of many contributors that contributions were made to assist the White family without restriction; and
3. The remaining 50% shall be distributed to the charity hereinafter named. First the court shall set forth the reasons for the selection of the particular charity. During the course of preparing this decision, the court asked counsel for petitioner and the Attorney-General to supply the court with suggestions of charitable organizations that operate in the Capital District. The court was searching for an organization or organizations with purposes and objectives closely akin to the subject here. Both counsel complied. From the lists submitted, the court has selected the Unity House Families in Crisis Program, 2900 Fifth Street, Troy, New York. Unity House Families in Crisis Program is a subsidiary and program of Unity House, a nonprofit agency serving the area out of its headquarters located at 401 Monroe Street, Troy, New York. The Families in Crisis Program has been operating since 1979. In a booklet published and distributed by the Rensselaer County A. S. K. "Agency Serving Kids”, the Coalition for the Prevention of Child Abuse and Neglect, Rensselaer County Chapter, the Unity House Families in Crisis Program is described as follows: "Services to victims of domestic violence and abused/neglected youth between 16-21 years of age, including safe non-violent shelter in a secret location, crisis intervention counseling, legal advocacy, assistance with department of social services, housing, educational films and programs, aftercare, childcare during activities, recreation, transportation in an emergency, referral to batterer’s counseling services, counseling referrals, children’s counseling and programming, and parenting education, rural outreach services, community education/counseling. Fee: None to Family”.
The court recognizes one aim of the program as providing services to victims of domestic violence of which there is no suggestion in the record before the court in this case. The court believes however that this organization is best suited of *178 the many considered to carry out the direction of the court. The court directs that the remaining 50% of the fund shall be released to Unity House which shall restrict the use of said moneys to its Families in Crisis Program to be used in a manner consistent with and as close to the original intent of the donors to the Mei-Ling White Fund as is expressed in this decision. In making such a direction the court is not placing Unity House in a position of choosing disposition of funds at its peril. It should simply make its best effort to comply with the court’s request thereby fulfilling as nearly as possible the donative intent of the contributors.
The court notes that petitioner, the Troy Savings Bank, has not requested in its petition an award to reimburse itself for legal fees or any other expenses attendant to the initiation and prosecution of this application. The bank’s civic responsibility and generosity in this matter should be publicly acknowledged and commended which the court hereby does.
Finally, this proceeding, in many respects, is a tribute to the citizens of the community who responded so generously to a plea to help members of a family who sustained a great and tragic loss. Such grassroots funds are established from time to time, usually without any written expression of intent or indication of what will be done with any surplus. Perhaps the Legislature of the State of New York in its wisdom will consider the enactment of some rules to follow in cases of public solicitation and collection of funds so that fund founders, fund contributors and fund administrators such as banks will be afforded future guidance. Such regulations will, one hopes, not dampen the great public spirit and sense of compassion which underlie such efforts, including those manifested in this case.

 Stephen S. White died on October 16,1989.