Matter of Scanlon v Miller-Williams

2026 NY Slip Op 02543

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

IN THE MATTER OF HON. CHRISTOPHER P. SCANLON, AS MAYOR OF CITY OF BUFFALO, AND HON. MITCHELL P. NOWAKOWSKI, AS MEMBER OF COMMON COUNCIL OF CITY OF BUFFALO, PETITIONERS-RESPONDENTS,

v

BARBARA MILLER-WILLIAMS, AS COMPTROLLER OF CITY OF BUFFALO, RESPONDENT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

213.1 CA 25-01798

Present: Lindley, J.P., Bannister, Greenwood, Nowak, And Hannah, JJ.

WOODS OVIATT GILMAN LLP, BUFFALO (WILLIAM F. SAVINO OF COUNSEL), FOR RESPONDENT-APPELLANT.

CONNORS LLP, BUFFALO (TERRENCE M. CONNORS OF COUNSEL), FOR PETITIONERS-RESPONDENTS.

Appeal from a judgment (denominated order and judgment) of the Supreme Court, Erie County (Emilio Colaiacovo, J.), entered September 25, 2025, in a proceeding pursuant to CPLR article 78. The judgment granted the petition to compel respondent to issue and sell certain bonds.

[*1]

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: In this proceeding pursuant to CPLR article 78, respondent appeals from a judgment granting the petition seeking a writ of mandamus compelling respondent to issue and sell bonds pursuant to resolutions duly adopted by the City of Buffalo Common Council (Common Council). We affirm.

Mandamus to compel lies "only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law . . . While [it] is an appropriate remedy to enforce the performance of a ministerial duty, . . . it will not be awarded to compel an act in respect to which [a public] officer may exercise judgment or discretion" (Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018], cert denied 587 US 1027 [2019], reh denied 588 US 934 [2019] [internal quotation marks omitted]; see Klostermann v Cuomo, 61 NY2d 525, 539-540 [1984]). "A discretionary act involve[s] the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (Matter of COR Van Rensselaer St. Co. III, Inc. v New York State Urban Dev. Corp., 221 AD3d 1524, 1528 [4th Dept 2023], lv denied 41 NY3d 907 [2024] [internal quotation marks omitted]; see New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005], rearg denied 4 NY3d 882 [2005]). Mandamus is an appropriate remedy to enforce the performance of "those acts which are mandatory but are executed through means that are discretionary" (Klostermann, 61 NY2d at 539).

Contrary to respondent's assertion, the comptroller possesses no discretion over whether to issue bonds (see generally Matter of Cohalan v Caputo, 94 AD2d 742, 742-743 [2d Dept 1983]). The Charter of the City of Buffalo (City Charter) grants the Common Council the power to "authorize the borrowing of funds by the city in accordance with article VIII of the constitution of the state of New York and applicable provisions of state law" (City Charter § 3-7 [f]). The City Charter provides that expenditures pursuant to the capital improvement budget "may not be made unless and until the council by appropriate action for the payment thereof provides funds or [*2]authorizes the issuance of serial bonds or other capital obligations" (City Charter § 20-27), and that "no debt shall be incurred for any capital improvement except as further authorized pursuant to" the Local Finance Law (City Charter § 20-30). The comptroller's involvement in the capital improvement budget process consists primarily of preparing a report listing the city's outstanding capital debt, "commenting in detail about the city's financial condition," and "advising as to the maximum amount of capital debt that the city may prudently incur" over the next five years "without impairing [its] credit rating and financial stability" (City Charter § 20-21). If the proposed capital budget exceeds the recommended cap, the comptroller must submit an additional report to the Common Council "advising as to the probable effect of such debt on the city's financial condition" (City Charter § 20-25).

The Local Finance Law gives the Common Council, as a finance board (§ 2.00 [4] [b] [2]) "the power to authorize the issuance of bonds and notes" (Local Finance Law § 30.00 [a]). Although the Common Council may delegate certain powers to the comptroller, its chief fiscal officer (§ 2.00 [5] [b]; see City Charter § 7-4), by resolution (Local Finance Law § 30.00 [a], [c]; see § 56.00 [a], [b]), we reject respondent's contention that the Common Council delegated all of its authority as a finance board to the comptroller in resolutions passed in 1945 and 1994. Those resolutions involved the delegation of powers relating to the issuance of specific types of bonds and notes, but neither resolution provided the comptroller with the power to authorize, or prevent the authorization of, the issuance of such bonds and notes. In other words, the Common Council delegated certain powers to the comptroller relating to how to issue bonds but did not delegate the threshold power found in Local Finance Law § 30.00 regarding whether to issue them. Thus, the Common Council did not provide the comptroller with the power to, in effect, veto Common Council authorizations directing her to issue bonds or notes for specific projects.

Inasmuch as respondent's duty to issue bonds was ministerial (see Klostermann, 61 NY2d at 539; Holroyd v Town of Indian Lake, 180 NY 318, 324 [1905]; Cohalan, 94 AD2d at 742-743; see generally 1991 Ops St Comp No. 91-8), Supreme Court did not err in granting the petition.

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court