OPINION OF THE COURT
Edward H. Lehner, J.
Social Services Law § 409-a (1) (a) provides that a "social services official shall provide preventive services to a child and his family, in accordance with the child’s service plan as required by section four hundred nine-e * * * upon a finding by such official that the child will be placed or continued in foster care unless such services are provided and that it is reasonable to believe that by providing such services the child will be able to remain with or be returned to his family.”
The city defendants take the position that "there is no legal requirement that all services identified at any particular stage in a family’s case record be provided at any time”. The court disagrees and finds that whatever preventive services the city Social Services Department determines should be provided, as set forth in a child’s service plan, shall in fact be provided in accordance with the plan, and herein issues an injunction to that effect.
THE COMPLAINT
The original complaint is on behalf of four named individuals, and three not-for-profit corporations dedicated to protecting children "on behalf of themselves and * * * all others similarly situated”.
The complaint alleges that defendants i) "have failed to make available to families with children at risk of removal to foster care the preventive services needed to permit the children to remain with their families” and ii) have failed to provide specified protective services to children in danger of child abuse. Plaintiffs assert that such failures violate their rights under State and Federal law.
The complaint seeks: 1) class certification; 2) a declaration that defendants have violated various provisions of the Social Services Law and the United States Code, as well as certain regulations adopted thereunder; and 3) an injunction requiring defendants to perform certain specified services required by law.
*85 The defendants are the Governor, the Mayor of the City of New York and their respective Commissioners of the Departments of Social Services.
After a conference with counsel in February, it appears that the city defendants satisfied the claims of the individual plaintiffs with respect to the preventive services demanded by them. Accordingly, they have withdrawn as party plaintiffs. However, subsequently two additional families have sought to intervene and have submitted a proposed amended complaint.
THE PENDING MOTIONS
At a second conference held on May 15, the claims that plaintiffs wish to pursue were delineated, certain motions and branches thereof were withdrawn, and the parties agreed that the following applications were before the court for determination: a) request by the Lee and Williams families for i) permission to intervene as party plaintiffs, ii) a preliminary injunction requiring the city to comply with specified statutes and regulations with respect to preventive services, and iii) class certification; b) motion by the institutional plaintiffs for an injunction directing the city defendants to comply with the requirement of Social Services Law § 424 (6) that all reports of suspected child abuse be investigated within 24 hours of receipt of a report, and that they determine (pursuant to Social Services Law § 424 [7]) within 90 days whether the report is "indicated” or "unfounded”, and for class certification; and c) a cross motion by the city defendants for summary judgment.
PREVENTIVE SERVICES
The defendants participate in a Federal program (42 USC § 670 et seq.) under which reimbursement is received for child welfare programs administered by them. As a condition to receiving such reimbursement, defendants must comply with 42 USC § 671 (a) (15), which requires them to make "reasonable efforts * * * (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home”.
In 1979 the Legislature enacted the Child Welfare Reform Act (L 1979, chs 610, 611), one of the purposes of which was to provide "increased emphasis on preventive services designed to maintain family relationships rather than responding to *86 children and families in trouble only by removing the child from the family” (Governor’s mem, 1979 McKinney’s Session Laws of NY, at 1814).
Social services in the City of New York are provided by the city Department of Social Services. However, the State Department of Social Services monitors it as well as all other local Social Services Departments. Should the city fail to adhere to State or Federal law or regulations, the State is authorized to withhold or deny reimbursement to the locality. (Social Services Law § 153-d.)
"Preventive services”, as defined in Social Services Law § 409, are services designed to avoid foster care placement and enable a child placed in such care to return to his family at an early date. Social Services Law § 409-e (1) provides that with respect to any child identified as being considered for placement in foster care, the social services district shall make an assessment of the child and his problems within 30 days of such identification. Subdivision (2) of the section states that after such assessment, the district "shall in consultation with the child’s parent or guardian, where appropriate, establish and maintain a child service plan”. The plan is to include short and long-term goals; actions needed to meet the goals; and identification of the services required by the child, the availability thereof, and the manner in which they are to be provided, with alternative plans where desired services are not available. The plan is to be "reviewed and revised, in consultation with the child’s parent or guardian, where appropriate”, within 90 days after its preparation and at least once every six months thereafter. (Social Services Law § 409-e [3].)
From the statutes and regulations there are a panoply of options available to the social services official preparing the plan. The problems of each child will vary with resulting individualized service plans.
The first sentence of Social Services Law § 409-a (1), quoted above, explicitly states that the preventive services contained in the service plan "shall” be provided. The language of subdivision (2) of said section further demonstrates that the Legislature did indeed intend the foregoing to be a mandatory obligation as it provides that a social services official is authorized to provide additional preventive services to a child which are not "required” under subdivision (1). Thus, it is clear that the services spelled out in a service plan must be provided.
Hence, whatever section 409-e plan is in effect at a particu *87 lar time is in the nature of a contract by the city, the performance of which is enforceable by a court. That is not to say that the city may not, pursuant to statute (Social Services Law § 409-e [3]), alter the plan from time to time. But the city has an obligation to deliver whatever available services it proposes at any particular time. As contemplated in section 409-e (2), which refers to "short term, intermediate and long range goals”, the plan may provide for certain services to be delivered at future dates.
In Klostermann v Cuomo (61 NY2d 525, 530-531 [1984]), the court, in upholding a complaint by certain patients of State mental institutions for a declaratory judgment, said: "Their claims do not present a nonjusticiable controversy merely because the activity contemplated on the State’s part may be complex and rife with the exercise of discretion. Rather, the judiciary is empowered to declare the individual rights in all such cases, even if the ultimate determination is that the individual has no rights. Moreover, if a statutory directive is mandatory, not precatory, it is within the court’s competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature and, if it has not, to direct that the agency proceed forthwith to do so.”
In that case the plaintiffs were relying on Mental Hygiene Law § 29.15 (f) which provided that the discharge of patients from State mental hospitals "shall be in accordance with a written service plan”, the broad outlines of which were set forth in the statute. In response to the State’s argument that the preparation of the plan and creation of follow-up programs are "activities replete with decisions involving the exercise of judgment or discretion”, the court observed (supra, p 539): "What must be distinguished, however, are those acts the exercise of which is discretionary from those acts which are mandatory but are executed through means that are discretionary.”
Similarly here, the contents of the service plans lie in the good-faith discretion of the city Social Services Department, but the preparation of a plan, after the identification of a child at risk of being placed in foster care, and its implementation are mandatory.
Thus, the court will not be determining what preventive services should be provided (a "legislative and administrative policy beyond the scope of judicial correction”, Jones v Beame, *88 45 NY2d 402, 408 [1978]), but only that the city should fulfill its obligations of performing the services which its officials have, in the exercise of their discretion, recommended to achieve the goal of avoiding foster care placement.
CONCLUSIONS WITH RESPECT TO PREVENTIVE SERVICES
The application of the Lee and Williams families to intervene is granted, and the proposed amended complaint (which is identical to the original complaint except that it adds allegations with respect to these two families) is deemed the complaint in this action. The court notes with regret the passing of David Williams (one of the children of Elouise Williams) whose death at the age of 40 days was attributed to sudden infant crib death syndrome while residing at the Martinique Hotel.
Since it is clear that the children of the intervening families are at risk of being placed in foster care, their motion for a preliminary injunction is granted, and in accordance with the above, the city defendants are hereby directed to prepare, within 30 days of service of a copy of this order, a service plan for intervenors as required by Social Services Law § 409-e, and to thereafter provide them services in accordance therewith. Since there does not appear to be any further issues before the court with respect to intervenors’ individual rights, the grant of the foregoing relief is in effect the grant of summary judgment to them.
The plaintiffs have not requested that the court designate the services to be provided and the court will not do so, nor will it review any plan proposed, with the sole caveat that intervenors shall have leave to seek further relief upon demonstration that the city defendants are not acting in good faith in implementing the foregoing.
The application for class certification is denied as superfluous, as there is nothing to indicate that the governmental defendants will refuse to comply with the foregoing court interpretation of the Social Services Law with respect to the delivery of preventive services, and hence members of the proposed class will be protected under the principles of stare decisis. (See, Williams v Blum, 93 AD2d 755 [1st Dept 1983], lv dismissed 61 NY2d 606, 905 [1984]; Matter of Bey v Hentel, 36 NY2d 747 [1975]; Matter of Cohen v D’Elia, 55 AD2d 617 [2d Dept 1976].)
*89 PROTECTIVE SERVICES
With respect to protective services, there is no dispute regarding the meaning of the statute. The sole controversy relates to whether the city’s compliance with the statutory requirements is so deficient as to warrant the issuance of an "obey the law” injunction and thus, to a large extent, have the courts monitor compliance through the contempt power.
Plaintiffs point out that a recent report shows that in 11% of cases of reported suspected child abuse in 1985, the city failed to conduct an investigation within the mandated 24-hour period, which plaintiffs assert translates to 6,000 children. This rate is apparently higher than that of prior years. Plaintiffs further contend that the city fails to comply with its obligation to conduct a full investigation within the mandated 90-day period.
A memorandum from the city Deputy Administrator of Special Services for Children dated March 18, 1986 shows that investigations were not made within the 24-hour contact period in 436 cases of reported child abuse during the months of December 1985 and January and February 1986, which constituted approximately 9% of reported cases during that three-month period. In explaining the reasons for the situation, the memorandum notes that certain anonymous calls receive a "low priority” status, and "cases with lower risk characteristics are put at the end of the queue” and "if time permits, we contact: if not, they are held for the field offices”.
Social Services Law § 424 requires that "all” reports of suspected child abuse receive an investigation within 24 hours after receipt of the report. The city recognizes this obligation as its papers show that it is seeking to obtain 100% compliance. However, it appears from the latest report referred to above, that the city still fails to comply in a significant number of cases. Although these cases may well constitute reports showing the least risk of danger to a child, the Legislature has not given the city the option of deciding which cases to investigate though, of course, prudence would dictate that the reports that appear most serious be given priority.
In Bruno v Codd (47 NY2d 582 [1979]), injunctive relief was sought by persons alleged to be "battered wives” against clerks of the Family Court because they allegedly deterred the filing of certain types of petitions. Judge Fuchsberg, writing for a three-Judge plurality, found the dispute justiciable, but dismissed the action because the court administrators indi *90 cated that the practice complained of would no longer be tolerated and disciplinary proceedings would be taken against any clerk violating court policy, and the Legislature amended the Family Court Act to specifically prohibit the actions complained of. In so ruling Judge Fuchsberg observed (p 591) that "we must also recognize that any system administered by human beings will unavoidably encounter occasions on which employees will err”.
The city argues that such ruling applies to the case at bar because the city is i) aware of its responsibilities with respect to abused children and the "unmet needs that are documented” in the submitted reports, and ii) has taken "appropriate steps to resolve or satisfy them”.
The court finds that the situations are not parallel. In Bruno (supra) the complaints that remained after the corrective governmental action were acts of individuals in violation of their sworn duties. Here we have the city government apparently still unable to meet its investigative obligations with respect to approximately 1 out of every 10 reports of suspected child abuse. This does not appear to be human error, but rather inadequate institutional response by government.
CONCLUSIONS WITH RESPECT TO PROTECTIVE SERVICES
Since the Legislature requires that "all” reports of abuse receive this prompt investigation, and statistics do not indicate that the city has appreciably improved its record on this issue over the recent years, it appears that on the merits plaintiffs have demonstrated a strong likelihood of success. Accordingly, since there is clearly a danger of irreparable harm to children if the statute is not complied with, and since a balance of the equities favors plaintiffs’ position, the requirements for the issuance of a preliminary injunction have been satisfied. (Grant Co. v Srogi, 52 NY2d 496 [1981].)
With regard to the issuance of reports under Social Services Law § 424 (7) within 90 days, the papers are not clear as to whether the city is failing to comply with this mandate. Since where "key facts are in dispute, the [preliminary injunction] will be denied” (Faberge Intl. v Di Pino, 109 AD2d 235, 240 [1st Dept 1985]), plaintiffs’ motion for such relief based on their claim of noncompliance with this subdivision is denied. However, a prompt trial would be in order.
*91 On its cross motion to dismiss, the city asserts that the claims asserted are not "justiciable”. However, the court in Klostermann v Cuomo (supra, p 536) dealing with a somewhat similar controversy, stated that where "the Legislature has mandated certain programs and * * * the executive branch has failed to deliver the services * * * [the] appropriate forum to determine the respective rights and obligations of the parties is in the judicial branch”. Moreover, the court indicated that the failure to comply with a legislative mandate cannot be justified by a lack of staff. (See also, Matter of Lavette M., 35 NY2d 136 [1974]; Matter of Kesselbrenner v Anonymous, 33 NY2d 161 [1973].)
On the issue of the standing of the institutional plaintiffs, although class certification will be denied with respect to the claims for protective services for the same reason referred to above with relation to the claims for preventive services, the court finds that these plaintiffs possess the requisite standing to maintain the action in their own right, as the demands on their respective budgets will be increased if government fails to provide the mandated protective services.
In Matter of MFY Legal Servs. v Dudley (67 NY2d 706 [1986]), the plaintiff legal services organization was denied standing because it could not demonstrate that it suffered any injury as a result of respondents’ actions in that the claim that the actions would result in greater demand for its services was found "too speculative”.
Here, the potential injury to the institutional plaintiffs has been demonstrated to be real. Hence, they can assert injury in their own right, and thus they possess standing to maintain this action. (See also, Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436 [1983]; National Org. for Women v State Div. of Human Rights, 34 NY2d 416 [1974].)
In view of the foregoing, the city defendants are hereby directed, pending the trial of this action, to comply with Social Services Law § 424 insofar as it mandates that within 24 hours of receipt of a report of suspected child abuse they commence or cause to be commenced, an appropriate investigation in accordance with the provisions of subdivision (6) of that section.
The court recognizes that, as indicated in Bruno v Codd (supra), human error will result in a certain amount of noncompliance, as will unexpected emergencies. However, the city should do better than it has, and it is herein being required to *92 perform up to the standard mandated by the Legislature for the protection of children in danger of abuse.
Childhood is precious. It never returns. Unless society treats children with problems with utmost care and promptly provides necessary services it may well end up caring for problem adults through the services of the criminal justice system.
Any request for relief before the court not herein granted is denied.