OPINION OF THE COURT
Elliott Wilk, J.
The motions in Martin and Bill A. v Gross (Martin and Bill *215 A.) (index No. 24388/85) and Cosentino v Perales (Cosentino) (index No. 43236/85), which challenge defendants’ failure to provide sufficient services to avoid the imposition of foster care placement for children, are consolidated for disposition.
The plaintiffs in Martin and Bill A. (supra) include Martin, Bill, Laura and Vincent A. and their mother Aurora A.; Dakinya B. and her mother Lucille B.; Pamela C. and her mother Bonnie C.; Julie D. and her grandmother Elvia D.; and Jim E. These children and their families claim entitlement to protective and preventive services[1] either to avert the need for foster care placement or to shorten the duration of foster care and facilitate the reunion of the children with their families.
The plaintiffs in Cosentino (supra) include Katherine Casentino and her son; Iris Hernandez and her two daughters; and Alberta and David Benjamin and their three children. Nanette Pinchón and William Flynn and their four children, and Linda Wilson and her three children have moved to intervene as plaintiffs. The defendants have consented to the intervention of the Pinchón family and have raised no substantive objections to the intervention of the Wilson family. Accordingly, both motions to intervene are granted. The Cosentino plaintiffs claim entitlement to housing-related preventive services to avert or shorten foster care placement and thus preserve family integrity.
Plaintiffs in both cases move for preliminary injunctions and class certification. The city defendants cross-move to dismiss and for summary judgment. The named plaintiffs were granted preliminary relief pending the determination of these motions.[2] Noncompliance with the preliminary relief is alleged with respect to all plaintiffs. The Martin and Bill A. plaintiffs also move to hold the city defendants in contempt for failing to comply with the orders relating to the C. and D. families.[3]
Social Services Law §§ 11, 17 and 20 charge defendant Perales, as Commissioner of the New York State Department of Social Services (NYSDSS), with the duty to implement and supervise all social welfare programs within the State, including preventive and protective services for children. His respon *216 sibilities include evaluating the rules and procedures adopted by local social services districts and monitoring the local districts’ compliance with the Social Services Law and State regulations, to determine whether they are entitled to State reimbursement. (See, Social Services Law § 20 [3] [e].)
New York City is a social services district within the meaning of Social Services Law § 56. Defendant Gross, as Administrator of New York City Human Resources Administration (NYCHRA) and as Commissioner of New York City Department of Social Services (NYCDSS), and defendant Brettschneider, as Deputy Administrator of Special Services for Children (SSC), are responsible for providing child welfare services, including preventive and protective services. (See, Social Services Law § 395.)
REQUESTED RELIEF
The Martin and Bill A. plaintiffs seek to compel defendants to comply with State and Federal law by providing them with preventive and protective services reasonably calculated to preserve family integrity. They allege that systemic problems exist which are incompatible with the delivery of legally mandated preventive and protective services. They seek an order directing defendants to develop a comprehensive plan which complies with defendants’ statutory obligation.
The Cosentino plaintiffs claim that defendants have a policy and practice of encouraging or inducing homeless or inadequately sheltered families to place and keep their children in "voluntary” foster care for extended periods of time because of inadequate or nonexistent housing. They seek to enjoin the placement or retention of children in foster care unless defendants first (1) determine whether the provision of housing-related preventive services can avert or shorten foster care; (2) inform affected families of the availability of housing-related preventive services; and (3) develop and implement meaningful case plans to ensure the provision of preventive housing services. They contend that defendants must develop mechanisms to link the preventive service program with various housing agencies and programs throughout the city.
The Cosentino plaintiffs also seek to enjoin the State from imposing a 90-day limit on emergency shelter as a preventive housing service.
The fundamental right to family integrity forms the core of both actions. Plaintiffs request that defendants provide suffi *217 cient services to enable families to remain united. They claim a right to no more than the preventive services mandated by State and Federal law. In addition, they seek to enforce their rights under the protective services law which serves as a triggering mechanism for the provision of preventive services.
PRELIMINARY INJUNCTION
To obtain a preliminary injunction, plaintiffs must demonstrate (1) that they are likely to succeed on the merits; (2) that they will suffer irreparable harm absent preliminary relief; and (3) that the equities balance in their favor. (Grant Co. v Srogi, 52 NY2d 496 [1981].)
Fundamental constitutional principles of due process and protected privacy interests prohibit governmental interference with the liberty of a parent to supervise and rear a child except upon a showing of overriding necessity. (See, Santosky v Kramer, 455 US 745, 753 [1982]; Wisconsin v Yoder, 406 US 205 [1972]; Stanley v Illinois, 405 US 645, 651 [1972].) "The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment * * * the Equal Protection Clause of the Fourteenth Amendment * * * and the Ninth Amendment”. (Stanley v Illinois, 405 US, at 651 [citations omitted].) Consistent with the constitutional protection of family integrity, Congress and the New York State Legislature have expressed a clear preference for the preservation of the family unit by enacting laws to further this goal.
The Adoption Assistance and Child Welfare Act of 1980 (Pub L 96-272, 42 USC § 670 et seq.) requires States receiving Federal foster care funds, as New York does, to make "reasonable efforts” to prevent a child from entering foster care, and to develop a case plan for each child- in foster care which assures the provision of services designed to facilitate the child’s return to his/her parent(s). (42 USC § 671 [a] [15], [16].)
The New York State Legislature has found that with respect to guardianship and custody of destitute or dependent children, the State’s primary obligation is to provide services to preserve or restore family integrity: "[T]he state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home.” (Social Services Law § 384-b [1] [a] [iii].)
The law provides that: "As far as possible families shall be kept together, they shall not be separated for reasons of poverty alone, and they shall be provided services to maintain *218 and strengthen family life.” (Social Services Law § 131 [3] [emphasis added].)
Further, the Legislature has directed social services officials to: "Administer and supervise relief to families with destitute children when * * * relief is necessary to prevent the separation of children from their parents.” (Social Services Law § 397 [1] [b].)
The preventive services law and regulations (Social Services Law § 409 et seq.; 18 NYCRR part 423 et seq.), the cornerstone of the Child Welfare Reform Act of 1979, contain specific and unambiguous provisions detailing the steps that must be taken and the services that must be provided to avert or shorten foster care placement.
A child may not be placed in foster care unless preventive services have been provided to the family and child prior to placement, unless (1) such services have been refused and that refusal is documented; or (2) placement is court ordered; or (3) the child has been or is at serious risk of harm by the parent; or (4) the parents are unavailable. (18 NYCRR 430.10.)
The provision of preventive services is mandatory upon a finding that a "child will be placed or continued in foster care unless such services are provided” (Social Services Law § 409-a [1] [a]; 18 NYCRR 430.9, 430.10). This, of course, includes children found to be at risk of foster care placement as a result of an investigation pursuant to the protective services law. (See, Social Services Law § 424 [9], [12]; 18 NYCRR 430.9, 432.1 [i]; see also, Family Ct Act § 1052 [b].)
When a social services district receives an application for foster care services or otherwise identifies a child as being considered for placement, the district must conduct a full and prompt assessment of the child and his/her family circumstances. (Social Services Law § 409-e [1]; 18 NYCRR 428.6.) The case record maintained by the district must include "a summary of what financial needs, including a lack of adequate housing, impairs the parents’ * * * ability to care for the child adequately”. (18 NYCRR 430.9 [c] [4] [ii] [emphasis added].) Once a determination is made that preventive services are warranted, they "shall be provided according to the needs of the child and his family” (18 NYCRR 423.4 [a] [emphasis added]).
Once the assessment is complete, the social services district must, upon consultation with the parent(s), establish and maintain a comprehensive child service plan which identifies *219 the family’s service needs and includes a mechanism for the provision of such services. (Social Services Law § 409-e [2] [c].) This plan must include the provision of services designed to keep the family intact.
The preventive services which may be provided when needed to avert or shorten foster care placement are delineated at 18 NYCRR 423.2 (b). Significantly, the regulations provide that each social services district "shall ensure” that each child and his or her family mandated to receive preventive services have certain "core services” available to them where "such services are identified as needed in the child’s service plan”. (18 NYCRR 423.4 [d].) These core services include day care, homemaker services, parent training and aid, transportation, clinical services, and 24-hour access to emergency services such as shelter, cash and goods. (18 NYCRR 423.4 [d].)
The welfare of its children should be among the highest priorities of the State. Neither the spirit nor the letter of the law permits defendants to circumvent the preventive services law and regulations by, in the first instance, placing and retaining children in foster care. This practice is inconsistent with defendants’ duty to protect the interests of its children.
Plaintiffs charge that it is defendants’ practice to ignore the applicable statutes and regulations in placing and retaining children in foster care. In support of their position, plaintiffs submit affidavits and exhibits detailing their own experiences with preventive and protective services and the foster care system. They also submit various reports and experts’ affidavits (including affidavits of social services workers) detailing the failings of these programs.
The papers submitted by both sides demonstrate that plaintiffs are likely to succeed on the merits of their claims. Even after plaintiffs were granted preliminary relief, the defendants were unable to evaluate adequately some of these families or to provide services in a way that comported with the applicable statutes and regulations.
The Cosentino plaintiffs are families with children in need of adequate shelter and other housing services. Ms. Cosentino, homeless, went to SSC to request emergency shelter. This request was denied and the SSC caseworker offered her no alternative but to place her son in foster care. The case record demonstrates that lack of housing was the sole reason for her son’s placement. Ms. Hernandez also was not provided with *220 emergency shelter. The primary reason for her daughters’ placement was Ms. Hernandez’s homelessness.
The Benjamin and Pinchón families lived in dangerously substandard housing. They requested assistance from the city defendants to help them secure adequate housing. The city responded with a threat to place their children in foster care. Ms. Wilson was also denied emergency shelter and threatened with the imposition of foster care. No preventive services were provided to these families until they became parties to this lawsuit.
The Martin and Bill A. plaintiffs are also families entitled to preventive services. The papers submitted by plaintiffs and defendants show that they were neither offered nor provided with the preventive services to which they were entitled. The experiences of the B. and D. families provide clear examples of defendants’ noncompliance with the applicable statutes and regulations.
A year and a half prior to the commencement of this lawsuit, Dakinya B. was raped at knifepoint. She was 10 years old. Subsequent to the rape, Dakinya became increasingly disturbed and was in desperate need of psychotherapeutic services. After unsuccessfully trying to obtain suitable services on her own, Lucille B., Dakinya’s mother, filed a PINS petition in Family Court which resulted in a referral to SSC. The only service offered by SSC was foster care. SSC placed Dakinya in a group home where she remained for two weeks. A few months later, Lucille B. again went to SSC for assistance and again, the only service provided was foster care. Dakinya was placed first with foster parents who immediately requested her removal, and then in a group home which requested her removal.
In the months preceding Justice Shorter’s preliminary order, SSC continued to ignore Lucille B.’s repeated requests for psychotherapeutic preventive services. Two months after Justice Shorter’s order, which directed defendants to conduct a thorough evaluation of the B. family and to provide them with services, Dakinya B. was institutionalized at Bronx Children’s Psychiatric Center. During that period defendants failed to complete an evaluation of the B. family or to provide them with any services.
Julie D. died recently. She was four years old. Her twin brother, Juan, died prior to the commencement of this lawsuit. Both children had AIDS. Elvia D. is their maternal *221 grandmother and, at the time this lawsuit was commenced, was caring for Julie and her five-year-old sister. Because defendants refused to provide Ms. D. with the preventive services she needed and requested, and despite Ms. D.’s desire to care for them, Julie and Juan were forced to spend the majority of their short lives in a series of foster care institutions and homes.
Until Ms. D. was granted preliminary relief, her repeated requests to SSC for (1) assistance in securing a larger apartment to accommodate Julie’s medical equipment; (2) homemaker services to help her meet Julie’s medical needs, which included almost daily doctor’s appointments; and (3) foster parent status to enable her to receive the allowance she needed to care properly for Julie, fell on deaf ears. Even after preliminary relief was granted, defendants never provided the D. family with suitable housing accommodations.
The city defendants oppose the preliminary injunction motions and move for dismissal on the grounds that (1) they have met their obligations under the law; (2) plaintiffs’ claims are now moot; (3) plaintiffs’ claims are nonjusticiable; and (4) plaintiffs have failed to exhaust administrative remedies. The city defendants do not deny the need for improvement in the provision of preventive services and claim that they have recently taken steps to rectify the system’s deficiencies.
A careful reading of defendants’ motion papers, including the city employees’ notes and records, reveals that the city has failed to meet its obligations to plaintiffs. Some of the papers submitted in support of the city’s position are, on their face, lacking in credibility. I am particularly concerned with the city’s attempt to discredit some of the plaintiffs as parents. I do not believe the record supports the city’s allegations. Furthermore, the very making of these allegations is indicative of a philosophy fundamentally at odds with the letter and spirit of the preventive services law. Poverty and homelessness create enormous problems for families. The preventive services law was enacted to address these problems. Accordingly, it is incongruous for the city to point to these problems as a basis for denying services.
The city’s contention that these cases should be dismissed as moot because plaintiffs are now being provided with preventive services must fail. Virtually no preventive services were provided to plaintiffs until they became parties to this litigation. Apparently because of far-reaching problems and *222 deficiencies in the preventive services system, the city has not even been able to comply with the preliminary relief already granted. Furthermore, the issues raised "are of public importance and significance and are likely to recur and yet evade review.” (Matter of Lamboy v Gross, 126 AD2d 265, 273 [1st Dept 1987]; see also, Matter of Jones v Berman, 37 NY2d 42, 57 [1975]; McCain v Koch, 117 AD2d 198 [1st Dept 1986].)
Plaintiffs’ claims are justiciable. (See, Klostermann v Cuomo, 61 NY2d 525 [1984]; Grant v Cuomo, 134 Misc 2d 83 [Sup Ct, NY County 1986].) In Klostermann the Court of Appeals held that an action such as this may be brought to establish that government officials are not satisfying nondiscretionary obligations to perform certain functions. As in Klostermann, plaintiffs do not seek to challenge the underlying policy of the applicable statutes and regulations, but merely to enforce their rights under them.
Where mandatory acts are involved, claims are not rendered nonjusticiable merely because the acts "may be complex and rife with the exercise of discretion.” (Klostermann v Cuomo, supra, at 530.)
The Social Services Law and regulations impose a mandatory duty on the city defendants to conduct thorough evaluations, to develop meaningful service plans, and to provide the services identified in those plans. (See, Grant v Cuomo, supra.)
The city’s additional argument that the doctrine of exhaustion of administrative remedies bars plaintiffs’ claims also must fail. As the Court of Appeals has recognized, "[t]he exhaustion rule * * * is not an inflexible one.” (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978].) Aggrieved parties do not have to exhaust administrative remedies where it "would be futile * * * or * * * cause irreparable injury” (supra, at 57). The city does not deny that plaintiffs are entitled to services. The systemic failures which plaintiffs challenge cannot meaningfully be addressed in an administrative hearing. Indeed, the frustration encountered by plaintiffs even after court orders were rendered on their behalf has been well documented. Thus, resort to administrative remedies would be futile. Additionally, the delays involved in the administrative process might well cause the separation of children from their parents, which constitutes irreparable harm.[4]
*223 Plaintiffs persuasively argue that the State’s 90-day limit on provision of emergency shelter (18 NYCRR 423.4 [b] [4]) conflicts with the purpose of the preventive services law and is arbitrary and capricious. As discussed above, State law requires that preventive services be provided according to a family’s assessed need. 18 NYCRR 423.4 (b) (4) arbitrarily limits the provision of emergency shelter as a preventive service to 90 days, notwithstanding the fact that provision of emergency shelter for a longer period might well avert or abbreviate foster care placement. The 90-day rule is unrelated to the needs of homeless families[5] and is at odds with governing law. (See, Motor Vehicle Mfrs. Assn. v State Farm Mut., 463 US 29 [1983].)
Not only have plaintiffs demonstrated a likelihood of success by dramatizing the defendants’ failure to comply with the applicable provisions of the Social Services Law, but they have ably documented the consequences of defendants’ actions on their lives.
The law’s preference for keeping families together creates a presumption that unnecessary foster care placement is irreparably harmful to children and their families. That the incidence of confirmed abuse and neglect of children in foster care is comparable to that in the population-at-large supports this presumption. (See, The Foster Care Pyramid: Factors Associated With The Abuse and Neglect of Children in Foster Boarding Homes, Report of Offices of City Council President and Human Resources Admin, Aug. 1982.) If a significant percentage of children in foster care are abused, and a child who has not been abused by his or her parents is placed in foster care, the likelihood of that child being abused increases substantially.
Julie and Juan D.’s experience in foster care illustrates this point. One of their placements was an institution primarily devoted to the needs of disturbed teen-agers. Although they were only 18 months old at the time, they slept in beds, rather than in cribs, and were fed their meals on the floor. They remained there until Ms. D., on one of her frequent *224 visits, noticed that Julie’s face was black and blue and swollen and took them to the hospital. They were then placed in a foster home where it appears they were not properly fed or clothed. On one visit, Ms. D. noticed that Juan was badly bruised and that Julie had what appeared to be cigarette burns on her body. She took them to the hospital where they were treated. Their pediatrician later filed abuse charges against the foster mother.
Similarly, while in foster care, Ms. Cosentino’s infant son was admitted to the hospital with bruises all over his body and a temperature of 104 degrees. One of Ms. Hernandez’s daughters was sexually abused by her foster father, who was later indicted for criminal molestation.
Plaintiffs have also shown that the equities balance in their favor. The duty to provide for the aid, care and support of the needy is specifically mandated by the Constitution of this State. (NY Const, art XVII, § 1.) Limited resources is not a proper justification for the denial of services. (See, Felder v Foster, 71 AD2d 71, 75 [4th Dept 1979], appeal dismissed 49 NY2d 800 [1980], citing Shapiro v Thompson, 394 US 618, 633 [1969]; Tucker v Toia, 89 Misc 2d 116, 128-129 [Sup Ct, Monroe County 1977], affd 43 NY2d 1 [1977].) Neither is alleged shortage of staff. (See, Klostermann v Cuomo, 61 NY2d 525, 537 [1984], supra; Matter of Kesselbrenner v Anonymous, 33 NY2d 161, 168 [1973].) Ironically, the cost of foster care often outstrips the cost of preventive services. (See, Good Money After Bad: An Analysis of Expenditures and Performance in Private-Sector Foster Care, Report of Office of City Council President, May 1979, at 80-82.) The unnecessary placement and retention of children in foster care also places a great burden on both the foster care and Family Court systems.
Plaintiffs are entitled to injunctive relief against the city. To the extent that the city has and continues to fail to meet its obligations to provide preventive services, it is directed to develop and implement a plan that is consistent with its constitutional and statutory obligations.
Plaintiffs’ request for injunctive relief against the State is granted to the extent that it is preliminarily enjoined from imposing a 90-day limit on emergency shelter as a preventive service.
The city’s motions to dismiss pursuant to CPLR 3211 are denied for the reasons the preliminary injunction motions are granted and because the complaints state valid causes of *225 action. The city’s motions for summary judgment pursuant to CPLR 3212 are denied as premature because answers have not yet been served.
CLASS CERTIFICATION AND CONTEMPT
Plaintiffs may well be entitled to class certification. (See, Matter of Lamboy v Gross, 126 AD2d 265, supra.) Defendants’ actions with respect to the named plaintiffs while these motions were pending calls into question the presumption that they will comply with the preliminary injunction and any future permanent relief. Nevertheless, at this time I decline to certify a class. Plaintiffs may renew their motions for class certification upon a further showing of noncompliance.
Although there is enough on the face of the remaining contempt motion (concerning the provision of services to the C. family) to warrant further inquiry, at this time, I will deny the motion.

. Preventive and protective services are defined at Social Services Law §§ 409 and 411, respectively.

. Justice Kenneth Shorter granted preliminary relief to Martin and Bill A. and their mother and Dakinya B. and her mother. I granted relief to the remaining plaintiffs in both cases.

. Plaintiffs withdrew the motion for contempt on behalf of the D. family after the death of Julie D.

. I find the city’s reliance on the doctrine of exhaustion somewhat *223 puzzling. It appears that prior to this litigation no clear administrative mechanism existed to challenge the denial of preventive services.

. Defendants’ own data indicates that a family, once homeless, tends to remain undomiciled and trapped in the hotel/shelter system for an average of 10.65 months. (HRA Monthly Report: New York City Temporary Housing Program for Families with Children, at 6 [Sept. 1985].)