[672 NYS2d 2]

In the Matter of ROBERT MORRISON, Respondent-Appellant, et al., Petitioners, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant-Respondent, and NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

In the Matter of ROBERT MORRISON et al., Respondents-Appellants, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant-Respondent, and NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

First Department, March 26, 1998

APPEARANCES OF COUNSEL

*Kimani Paul-Emile* of counsel *(Nancy Chang* and *Barbara Olshansky* on the brief; *Center for Constitutional Rights,* attorneys), for petitioners.

*Stephen P. Hightower* of counsel *(Robert A. Forte* and *Norman Spiegel* on the brief; *Dennis C. Vacco, Attorney-General,* attorney), for New York State Division of Housing and Community Renewal, appellant-respondent.

*Timothy J. O'Shaughnessy* of counsel *(Kristin M. Helmers* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for New York City Department of Environmental Protection, respondent.

## OPINION OF THE COURT

MAZZARELLI, J.

Petitioners are residents of two adjacent buildings, 39 and 41 North Moore Street in Manhattan. They commenced this CPLR article 78 proceeding to prevent the construction and operation of a laundry and dry cleaning establishment at 39 North Moore Street, a "Neo-Renaissance" landmarked building in the Tribeca West Historic District. The district is zoned for mixed, residential and commercial uses. In July 1995, the owner of the building, respondent Cadage Realty, leased the ground floor and basement to respondent White Glove Valet, Inc. (White Glove), which intended to operate the laundry and dry cleaning facility on the premises. After the Landmarks Preservation Commission determined it had no objections to the project in October 1995, the New York City Department of Buildings (DOB) issued a building permit. In November 1995, DOB sent a notice of revocation of the permit because the plans submitted by White Glove showed a facility larger than 2,000 square feet, exceeding the limit for a Use Group 6 under the New York City Zoning Resolution. After revised plans were submitted demonstrating a floor area of less than 2,000 square feet, DOB rescinded the notice of revocation in a letter dated December 11, 1995. A second notice of revocation was issued by DOB in January 1996, again relating to an improper zoning use, and White Glove again reapplied for a building permit. Meanwhile, White Glove also applied for an operating certificate from the New York City Department of Environmental Protection (DEP), which was required for the installation and operation of its dry cleaning equipment. The application was rejected as incomplete.

In December 1995, petitioners filed this article 78 proceeding, with a request for a temporary restraining order. The IAS Court issued a temporary order restraining DEP from granting any permits and approvals for the installation, construction and operation of a dry cleaning facility at 39 North Moore Street. By order dated January 5, 1996, a Justice of this Court modified the temporary restraining order to the extent of allowing White Glove to seek a permit to construct and operate the laundry portion of the establishment.

Petitioners' first cause of action asserted that the respondents' failure to conform the New York City Building Code (City Code) to the more stringent State Uniform Fire Prevention and Building Code (State Uniform Code), which apparently prohibits dry cleaning facilities in residential multiple dwellings (9 NYCRR 703.4 [a] [5]; [b] [5]; 717.3, table I-717; 739.4, table I-739), was arbitrary and capricious, and in violation of the Executive Law and the State Constitution. Petitioners alleged that although the New York State Department of Health and other agencies had issued reports revealing the substantial health hazards to residents posed by the perchloroethylene (perc) emissions from dry cleaning facilities, no changes in the City Code were ever adopted to bring it in conformity with the State Uniform Code. Accordingly, petitioners demanded that the State Fire Prevention and Building Code Council (Code Council) be compelled to convene and consider this issue.

Petitioners' second cause of action alleged that under the State Environmental Quality Review Act (ECL 8-0101 *et seq.* [SEQRA]) and New York City's Environmental Quality Review procedures (Executive Order No. 91, Aug. 24, 1977, as amended, 43 RCNY 6-01 *et seq.* [CEQR]), DEP was required to issue an environmental impact statement (EIS) before issuing any permits since the proposed dry cleaning facility would have a significant, adverse effect on air quality. Petitioners demanded that the City and State respondents be compelled to comply with all State and local laws and regulations requiring an environmental assessment, that respondents be permanently enjoined from issuing any permits or approvals and that any previously issued permits or approvals be annulled.[1]

In opposition to the petition, the State respondents asserted that petitioners lacked standing to compel the Code Council to

---

1. Petitioners do not challenge the dismissal of the third, fourth and fifth causes of action in their petition, and therefore we do not address them.

convene, and that the convening of the Council pursuant to Executive Law § 379 (4) and § 383 (1) (c) was a discretionary act not subject to mandamus. The City respondents cross-moved to dismiss the petition, arguing that DEP was not required to prepare an EIS in these circumstances because DEP's determination to grant or deny an operating certificate was an official act of a ministerial nature, which acts are specifically exempted from the environmental review requirements of SEQRA and CEQR (see, ECL 8-0105 [5] [ii]; 43 RCNY 6-02, 6-04 [e]). The City asserted that DEP's determination was ministerial because the sole criterion for issuance of the operating certificate was satisfaction of the requirements of the New York City Air Pollution Control Code (Administrative Code of City of NY §§ 24-128, 24-125 [Pollution Code]) and the regulations issued by the State Department of Environmental Conservation governing air quality standards (6 NYCRR 232.3).[2]

The IAS Court granted mandamus against the State Division of Housing and Community Renewal, concluding that Executive Law § 383 required the Code Council to convene to consider whether the City Code was less stringent than the State Uniform Code. The IAS Court rejected the State's arguments that the Code Council had total discretion on whether to convene, and that petitioners had no standing to petition the Code Council for review of a local code provision. However, the court denied petitioners' request for a preliminary injunction.

With respect to the cause of action seeking compliance with SEQRA and CEQR, the IAS Court found that DEP was not required to prepare an EIS before issuing an operating certificate since the issuance of such a certificate was a ministerial act. The court agreed with DEP that if an applicant satisfied the requirements of the Pollution Code, DEP was compelled by law to issue a certificate. The court further stated that "[t]he information contained in an EIS would not have any impact or bear any relationship to a determination by DEP" as to whether to issue the operating certificate.

After affording the State an opportunity to submit an answer to the article 78 proceeding, both parties renewed their arguments. By decision and judgment entered October 31, 1996,

---

2. These regulations were amended on April 15, 1997, during the pendency of this suit, and are far more detailed than the predecessor regulations. However, neither party has placed great emphasis on them, as DEP argues that they are not applicable to this proceeding commenced in December 1995, and petitioners assert that the new regulations do not fully address all the relevant environmental concerns.

the IAS Court adhered to its initial determinations directing the Code Council to convene to consider whether the City Code was less stringent than the State Uniform Code, denying petitioners' request that DEP prepare an EIS and denying petitioners' request for a preliminary injunction. The court dismissed respondent Namm, the City respondents and the additional State respondents from the case since no viable causes of action existed against them. An additional judgment granting the same relief was entered April 2, 1997.[3] The State respondent appealed and petitioners cross-appealed from both the October 31, 1996 and the April 2, 1997 judgments.

On appeal, the State respondent argues that the IAS Court erred in granting mandamus relief compelling the Code Council to convene to determine whether the City Code is less stringent than the State Uniform Code because that is a discretionary act under Executive Law § 383 (1) (c). We agree. "It is well settled that the remedy of mandamus is available to compel a governmental entity or officer to perform a ministerial duty, but does not lie to compel an act which involves an exercise of judgment or discretion [citations omitted]." (*Matter of Brusco v Braun*, 84 NY2d 674, 679.) Accordingly, a party seeking mandamus must show a " 'clear legal right' " to such relief (*supra,* at 679, quoting *Matter of County of Fulton v State of New York,* 76 NY2d 675, 678, citing *Matter of Legal Aid Socy. v Scheinman,* 53 NY2d 12, 16), such as where a duty to act is " 'premised upon specific statutory authority' " (*Matter of Grisi v Shainswit*, 119 AD2d 418, 420, quoting *Matter of Peirez v Caso,* 72 AD2d 797). "The right to performance 'must be so clear as not to admit of reasonable doubt or controversy.' (*Matter of Burr v Voorhis*, 229 NY 382, 387; *Matter of Association of Surrogates & Supreme Ct. Reporters v Bartlett,* 40 NY2d 571, 574.)" (*Matter of Grisi v Shainswit, supra,* at 420.)

It is undeniable that the State Uniform Fire Prevention and Building Code was promulgated "to provide a basic minimum level of protection to all people of the state from hazards of fire and inadequate building construction" (Executive Law § 371 [2] [b]), and to "reconcile the myriad existing and potentially conflicting regulations which apply to different types of build-

---

3. This judgment was entered after a stipulation between the parties agreeing that, in light of the amendments to the State Uniform Fire Prevention and Building Code Act (Executive Law § 370 *et seq.*), which transferred authority over the Code Council to the Department of State, the latter agency would be substituted as a respondent for the Division of Housing and Community Renewal.

ings and occupancies" (Executive Law § 371 [2] [b] [1]). To accomplish these goals, the State Uniform Code was made applicable as of March 1, 1982 in every local government that did not have an existing fire prevention and building code, and in those local governments that repealed their existing codes prior to January 1, 1984 (Executive Law § 373 [1]). Additionally, the Legislature made clear that local governments were without power to "void, repeal or make more or less restrictive any provisions of this article" (Executive Law § 379 [3]), and that the State Uniform Code "shall supersede any other provision of a [local law, rule or regulation] inconsistent or in conflict" with its provisions (Executive Law § 383 [1]).

Notwithstanding the above, the Legislature also recognized that the State Uniform Code should not be made automatically applicable in large municipalities such as New York City (Executive Law § 383 [1] [c]). Rather, section 383 (1) (c) provides that in cities with a population of over one million: "the existing building and fire prevention codes shall continue in full force and effect * * * unless the council, after analysis and consultation with the building and fire officials of such cities, shall determine that said local code provisions are less stringent than the uniform code. Existing local [codes] of such cities shall continue in full force and effect unless the foregoing is determined by the council."

· We disagree with the IAS Court's conclusion that this provision *requires* the Code Council to review the City Code. Clearly, there is no specific direction to the Council to undertake such review. While the statute's use of the phrase "shall determine" arguably suggests a mandatory duty, such a reading would be totally inconsistent with the additional language, used twice in this same paragraph, that the City Code is fully applicable "unless" the Code Council determines otherwise. In our view, the use of the term "unless" signifies a discretionary determination by the Code Council as to whether to review a local code.

This interpretation is supported by Executive Law § 379 (4), which addresses the situation where the municipality already had an existing code in place when the State Uniform Code became effective. Such is the case here. Section 379 (4) provides that within 120 days of the effective date of the State Uniform Code, "a local government may by resolution duly enacted petition the council for a determination as to whether an existing [code] in force in said local government is more stringent than the uniform code." Under section 379 (4), the local code remains

effective during the pendency of the petition, but if the Code Council determines that the local code is less stringent, the State Uniform Code becomes applicable after notice is given to the municipality. If the Code Council determines that the local code is not less stringent, then the local code continues in full force and effect "until the council, upon its own initiative, reviews such local code and determines it is no longer more stringent," in which case the State Uniform Code will apply (Executive Law § 379 [4]). The language used in this section stating that local governments "may" petition for Code Council review, and that the Council may conduct a review "upon its own initiative," likewise supports our conclusion that Code Council review is not mandatory, absent a request by a local government.

Based on the above, it may be seen that petitioners have demonstrated no "clear legal right" to mandamus relief. Had the Legislature intended Code Council review of existing local codes to be mandatory, it could easily have so provided. The statute simply does not require a municipality to submit an existing code to Code Council review, nor does it even hint that private citizens may petition to compel their local governments to do so. Although, as petitioners note, Executive Law § 382 (3) permits any "aggrieved" person to seek relief from violations of the Uniform Code, section 383 is clearly directed at specific violations pertaining to "the construction or use of a building," rather than the issue of review by the Code Council.

Petitioners' reliance on the Court of Appeals decision *Klostermann v Cuomo* (61 NY2d 525) is misplaced. In *Klostermann*, the petitioners were present or former patients at State psychiatric hospitals who sought mandamus relief compelling the responsible administrative agency to prepare written aftercare plans pursuant to the provisions of Mental Hygiene Law § 29.15 (f)-(h). Despite recognizing that the creation of the plans would involve the exercise of discretion, the Court granted mandamus relief since the duties imposed by the statute were mandatory and nondiscretionary (*supra,* at 539-541). The Court explained that there is a distinction between "those acts the exercise of which is discretionary from those acts which are mandatory but are executed through means that are discretionary" (*supra,* at 539). Petitioners' analogy between *Klostermann* and the instant case is inapposite. Unlike the situation in *Klostermann*, the act sought to be compelled here, review of the City Code by the Code Council, is itself discretionary under the above-cited provisions of the Executive Law.

While those provisions permit or even suggest, but do not require, review by the Code Council absent a request by a local government, there was no clear legal right to relief and the IAS Court's granting of mandamus relief was improper.

■ Petitioners' cross appeals from those portions of the IAS Court's orders refusing to compel DEP to comply with the environmental review provisions of SEQRA and CEQR are dismissed as moot. It is undisputed that White Glove has ceased all operations and has surrendered the lease to ground floor space at 39 North Moore Street. Consequently, White Glove's application to DEP for an operating certificate for its dry cleaning machines, the agency action allegedly subject to SEQRA review, is no longer pending. "[A]n appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment." (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714.) Under the present circumstances, there is simply no agency action left to review and a judgment in favor of petitioners on the cause of action relating to compliance with SEQRA would have no practical effect. Accordingly, the cross appeals have been rendered moot.

Contrary to petitioners' arguments, the requirements for the exception to the mootness doctrine have not been satisfied (*see, Matter of Hearst Corp. v Clyne, supra,* at 714-715). Even if we found that the issues raised were sufficiently substantial and novel, and were likely to recur in the future, we are unpersuaded by petitioners' argument that this is the type of issue that will typically evade review (*supra*). Petitioners claim that the issue of SEQRA review in connection with permit applications for dry cleaning facilities in residential buildings will consistently evade review because, as occurred in the present case, the use of injunctions and the violations issued by Department of Health Inspectors will inevitably force all applicants out of business before a determination is made on the applicability of SEQR. We reject this argument, which is wholly speculative and based on the mischaracterization that all owners of dry cleaning facilities are without sufficient financial means to contest petitioners' legal challenges.

This situation is not analogous to those cases where express time limitations found in a statute or permit rendered appellate review of an issue highly improbable (*see, Community Bd. 7 v Schaffer*, 84 NY2d 148, 154 [issue of whether community board has capacity to bring article 78 proceeding to enforce

Freedom of Information Law rights is one that will typically evade review because of relatively short time period in which board must carry out its Uniform Law Use Review Procedure responsibilities]; *Cellular Tel. Co. v Tarrytown*, 209 AD2d 57, 63-64, *lv denied* 86 NY2d 701 [municipality's short-term moratorium on installation of cellular antennas is not moot despite expiration of moratorium, since successive moratorium was passed and issue would typically evade review because of short duration of moratoria]; *Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation*, 158 AD2d 24, 28-29, *affd* 77 NY2d 983 [issue involving permit renewal application is likely to evade review because permits were valid for only one year]).

In the event this issue arises again, the petitioners in such a case need only file a timely article 78 proceeding to challenge the agency action, and, if necessary, seek any injunctive relief required to preserve the status quo (*see, Matter of Many v Village of Sharon Springs Bd. of Trustees*, 234 AD2d 643, *lv denied* 89 NY2d 811 [article 78 proceeding dismissed as moot where underlying project already completed and petitioners failed to seek preliminary relief in a timely manner to obtain such review]).

The parties' remaining arguments for affirmative relief are meritless.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Joan Lobis, J.), entered October 31, 1996, which, to the extent appealed from, granted the petition against the respondent New York State Division of Housing and Community Renewal solely to the extent of granting mandamus relief directing the State Fire Prevention and Building Code Council to convene and consider the issue of whether the State Uniform Fire Prevention and Building Code is more stringent than the New York City Building Code with respect to the location of dry cleaning facilities in multiple dwelling residential buildings, and denied all other relief requested in the petition including petitioners' request for a preliminary injunction and an order compelling the City and State respondents to comply with State and City laws as they pertain to the preparation of an environmental assessment and environmental impact statement, and order and judgment (one paper), same court and Justice, entered April 2, 1997, which, to the extent appealed from, granted the same relief, should be modified, on the law, to the extent that the mandamus relief directing the Code Council to convene is denied, and otherwise

affirmed, without costs. The cross appeals are dismissed as moot.

SULLIVAN, J. P., MILONAS, ELLERIN and NARDELLI, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered October 31, 1996, and order and judgment (one paper), same court and Justice, entered April 2, 1997, modified, on the law, to the extent that the mandamus relief directing the Building Code Council to convene is denied, and otherwise affirmed, without costs. The cross appeals are dismissed as moot.