*636 OPINION OF THE COURT
Rosalyn Richter, J.
On January 8, 2004, the Office of Court Administration (OCA) implemented a major statewide reclassification of its court security title series, which consists of those court employees responsible for providing security and maintaining order within court facilities. Prior to the reclassification, the court security title series functioned as two separate groupings based upon the specific courts to which the employees in the series were assigned. The first grouping consisted of court officers and supervisors assigned to courts of limited jurisdiction, such as the Civil, Criminal and Family Courts in New York City, the District Courts in Nassau and Suffolk counties, the City and Family Courts in Nassau and Suffolk counties and the Ninth Judicial District, and certain other courts in the Third and Fourth Judicial Districts.
The second grouping consisted of officers and supervisors assigned to courts of superior jurisdiction, such as the Supreme Courts in New York City, the Supreme and County Courts in Nassau and Suffolk counties and the Ninth Judicial District, and certain other courts in the Third and Fourth Judicial Districts. The second grouping of security titles was allocated to higher salary grades on the OCA salary schedules than the first grouping because the officers and supervisors in those titles were assigned to courts of superior jurisdiction.[1] According to OCA, these courts, unlike the courts of limited jurisdiction where the first grouping was assigned, regularly held jury trials and decided cases and proceedings more likely to draw public attention.
As a result of the reclassification, the changes made to the court security title series eliminated the bifurcated approach to security by creating one set of security titles that are to serve in all trial level courts. The court officer title from the first grouping and the senior court officer title from the second grouping, which were the line court officers, were abolished and a new title of NYS court officer-trainee was created. This new title is an entry-level position for new security personnel entering the court system. Under the new plan, trainees can be assigned to any court of either limited or superior jurisdiction, and upon successful completion of a two-year trainee program, will *637 advance to the newly-created title of NYS court officer. The reclassification also created a new title of NYS court officer-lieutenant, a position that falls between the NYS court officer and NYS court officer-sergeant titles. Furthermore, according to OCA, the duties and responsibilities of all of the remaining titles were changed to reflect the need to train and evaluate those new employees in the trainee title, and to manage officers’ deployment in multiple courts.
The reclassification resulted in the appointment to a higher salary grade for many officers in the New York State Supreme Court Officers Association, ILA, AFL-CIO (SCOA), the union representing security personnel in the Supreme Courts in New York City, and in the Supreme and other courts in the Ninth Judicial District. SCOA members who were previously assigned to the lower courts in the position of court officer, and who had two or more years of service, were placed in the title of NYS court officer, and were advanced from salary grade JG-16 to JG-17.[2] (On December 22, 2004, this title was reallocated and the officers were advanced to grade JG-18, retroactive to January 8, 2004.) Those officers previously serving in the lower courts as court officer-sergeant (JG-17) were advanced to the title of NYS court officer-sergeant (JG-19). Officers formerly serving in the lower courts as associate court officer I (JG-22) and principal court officer I (JG-24) were advanced, respectively, to the titles of NYS court officer-captain (JG-24) and NYS court officer-major I (JG-26). In the upper courts, officers previously serving as associate court officer II (JG-23) and principal court officer II (JG-25) were advanced, respectively, to the titles of NYS court officer-captain (JG-24) and NYS court officer-major II (JG-28). In addition to being placed on a higher salary scale, all of the affected officers received an upward adjustment in salary as a result of the reclassification.
Under Judiciary Law § 37 (3), a nonjudicial court employee who reaches a salary equal to or in excess of the maximum salary of the grade of his or her position, and who thereafter renders continuous service in that position for four years, is entitled to an additional longevity salary increment. Following the completion of eight years of such continuous service, the employee is entitled to receive a second additional longevity salary increment. The statute further provides that when a posi *638 tian is reclassified to a title allocated to a higher salary grade, with no substantial change in duties and responsibilities from those associated with the former title, an employee who had reached the maximum salary of the grade of his or her former position is deemed to have had continuous service at the maximum salary of the grade of his or her new position, notwithstanding that he or she is not receiving the maximum salary, of the new position. On the other hand, if there is a substantial change in duties and responsibilities between the former and reclassified titles, that employee is not entitled to the longevity credit from the former position.
By letters dated September 24, 2004 and October 5, 2004, counsel for the SCOA informed OCA that the union believed that certain of its members were entitled under Judiciary Law § 37 to continuous service credit for longevity payment purposes because they believed that the reclassification did not result in a substantial change in their duties and responsibilities. The SCOA demanded that these officers be granted continuous service credit, and that those who had reached either their fourth or eighth year of continuous service be given a longevity increase. By letter dated November 1, 2004, counsel for the Unified Court System informed the SCOA that because the duties and responsibilities of the reclassified titles were a substantial change from those of the former titles, the Judiciary Law prohibited the granting of the requested longevity credit and/or payments.
In this CPLR article 78 proceeding, petitioner John E Mc-Killop, as president of and on behalf of the SCOA, seeks a judgment in the nature of mandamus compelling respondent Jonathan Lippman, Chief Administrative Judge of the Unified Court System, to immediately provide these longevity payments and/or credits for the years of service completed by those members of the SCOA whose salary grades were advanced by the reclassification plan. Petitioner maintains that because the duties and responsibilities of the affected positions were not substantially changed, the longevity payments and/or credits are mandated by the Judiciary Law. Respondent argues that since the duties and responsibilities are substantially different, the demanded payments and credits are not permissible.
In order to compel a government official to perform an act mandated by law for him to perform, a petitioner must establish a clear legal right to the performance of that act. (Matter of Association of Surrogates & Supreme Ct. Reporters within City *639 of N.Y. v Bartlett, 40 NY2d 571 [1976].) The petitioner has the burden of presenting factual allegations of an evidentiary nature or other competent evidence tending to establish his or her entitlement to the requested relief. (Matter of Rodriguez v Goord, 260 AD2d 736 [3d Dept 1999].) Where the petitioner is unable to establish that he or she has a clear right to the performance sought, the petition seeking mandamus must be denied. (Matter of Morrison v New York State Div. of Hous. & Community Renewal, 241 AD2d 34 [1st Dept 1998].)
Applying these principles, the court concludes that petitioner’s request for an order of mandamus must be denied. Petitioner has failed to meet his burden of showing, as he must, that there is no substantial change in the duties and responsibilities between the former and reclassified security titles. The parties here dispute whether the court should consider the actual work being performed by the officers or should decide this case solely on the wording of the title standards. The court need not resolve this question since under either criteria, at this juncture, petitioner has failed to establish his right to article 78 relief. In support of the petition, petitioner has submitted affidavits from only six of the SCOA officers in the affected titles who state that their particular job duties have remained entirely the same since the reclassification. This small number of affidavits pales in comparison to the approximately 1,400 SCOA members employed by the Unified Court System in New York City and the Ninth Judicial District. Three affidavits are from officers employed in Westchester County, and one each from Rockland, Kings and Queens counties. There are no affidavits from officers working in New York, Bronx, Richmond, Orange, Putnam or Dutchess counties.
From this scant proof, petitioner would have this court find, as a matter of law, that the duties and responsibilities of all of its members in the affected titles have remained wholly the same. Clearly, given the number of courts and the range of parts in them, not every assignment requires a court officer to carry out all of the duties that he or she is authorized to perform by the title standards. Thus, the individualized experiences to date of the particular court officers who have submitted affidavits here are not an adequate gouge of the legal duties within the title and whether those duties have substantially changed. (See Cohen v New York State Civ. Serv. Commn., 90 AD2d 884, 886 [3d Dept 1982] [upholding a reclassification even though assignment to the newly reclassified duties will happen “as the need *640 occurs”].) The court therefore concludes that petitioner’s proof is inadequate to meet the heavy burden of showing a clear legal right to the performance sought.
In any event, even if the court were to accept petitioner’s claims that the actual daily duties of those court officers submitting affidavits have not substantially changed, there is no doubt that their legal job duties and responsibilities are not the same based on the title standards for each position. (See Matter of Gavigan v McCoy, 37 NY2d 548, 551 [1975] [“ (d)eterminative of what duties are properly performed within any given title are the job specifications for that title”]; Judiciary Law § 39 [8] [a] [“classification structure for all non-judicial officers and employees (of the Unified Court System) shall provide for the classification of positions in accordance with duties required to be performed in title in these positions”].) A review of the relevant title standards for each of the affected titles, along with the affidavit of Lawrence K. Marks[3] which explains the intended implementation of the new reclassification plan, has satisfied this court that, at least on paper, the duties and responsibilities of all of the affected titles have substantially changed. Prior to the reclassification, the court security title series consisted of two separate and distinct security forces with one force assigned to courts of limited jurisdiction and the other assigned to courts of superior jurisdiction. Through the reclassification, OCA eliminated this dual structure and dramatically revamped the court security title series by creating new titles, abolishing titles, consolidating titles and revising and redistributing the various duties performed by the titles contained in the former series. As a result of this restructuring, the title series has been radically altered so that a single unified security force now serves in all trial courts throughout the state.
Nowhere is this change more apparent than in the title standards for the line court officer title. Prior to the reclassification, the court officer title (JG-16) was the entry-level position for new court officers who were assigned to serve in the lower courts. The reclassification abolished this title and replaced it with a new title—NYS court officer (JG-18).[4] It is clear to this court that the new title of NYS court officer has substantially *641 different duties and responsibilities from that of the former court officer title. Whereas the old court officer title was an entry-level position, the new NYS court officer title is a position that requires successful completion of a two-year training program in the newly created NYS court officer-trainee title (JG-14).
The most significant change is that court officers in the new title are now eligible to be assigned to courts of superior jurisdiction. Previously, those officers could only serve in the lower courts. The differences between the duties and responsibilities of line officers serving in the upper courts and those serving in the lower courts cannot be understated. There can be no doubt that the courts of general jurisdiction regularly hold more jury trials and handle cases and proceedings more likely to draw public attention. In addition, court officers in the upper courts are more likely to be guarding more dangerous individuals accused of murder and other serious felonies. Furthermore, it is more probable that officers in the upper courts will be dealing with sequestered juries than will their counterparts in the lower courts. These critical differences between the upper and lower courts undoubtedly result in a substantial change in the duties and responsibilities of the line court officers assigned there.
Likewise, the duties and responsibilities of the new titles for supervising officers are substantially different from those of the old titles. At the outset, the old titles of court officer-sergeant, associate court officer I and principal court officer I, all of which involved assignment to the lower courts, have been replaced with new titles which allow for placement in the upper courts. Thus, for the same reasons outlined above for line officers, the duties and responsibilities of these supervisory titles are substantially different from the old titles. Furthermore, all of the new supervisory titles are substantially different from their previous counterparts due to the creation of the new entry-level court officer-trainee title. As noted above, officers in the trainee title must complete a two-year training program, at the end of which a decision will be made to terminate the trainee or promote him or her to the NYS court officer title. A review of the relevant title standards and Mr. Marks’s affidavit shows that all of the supervisory titles at issue here play a critical new role in the training, evaluation and promotion of the trainee title, and their duties and responsibilities have been revised to reflect this.
The reclassification has created the new title of NYS court officer-lieutenant, whose duties include supervision of NYS *642 court officer-trainees, NYS court officers and NYS court officer-sergeants. These changes have resulted in a substantial modification of the duties and responsibilities of those officers formerly serving in the court officer-sergeant series. The old title provided that these sergeants would merely assist their supervisors by explaining security procedures to the junior officers and would simply provide information to the supervisors for completion of probationary evaluation reports. In contrast, the new title standards provide for a more proactive role by the sergeants in the training and evaluation of trainees. They are now directly responsible for both on-the-job training of the new officers and for evaluating their performance. This is a critical change because the decision as to whether to promote or terminate the trainee is made based on the evaluation of the sergeant.
Similarly, the new titles of NYS court officer-major I, NYS court officer-major II and NYS court officer-captain have undergone substantial changes. As a result of the creation of the NYS court officer-trainee title, and the shifting of responsibility for the new officers’ training and evaluation to the newly created NYS court officer-lieutenant title, the duties and responsibilities of the most senior supervisors have evolved into a more managerial role. The reclassified senior supervisory titles are now responsible for establishing and overseeing a trainee program at the facilities under their command and for reviewing the evaluation and promotion recommendations prepared for each trainee, and for issuing their own recommendation. Put simply, the creation of the new trainee title has added duties and responsibilities to the supervisory titles that were not previously performed under the old titles.
Finally, the court is persuaded by respondent’s argument that it would be premature to find that the old and new positions are virtually the same, because OCA is still in the process of rolling out the components of the reclassified court security title series. In the summer 2004, 161 appointments were made to the newly created NYS court officer-lieutenant title. Furthermore, in early February 2005, the court officer academy produced its first class of 92 NYS court officer-trainees. A second academy class of 52 cadets began in late February 2005, and yet another class of 90 to 100 members is being planned. As explained above, the reclassification has resulted in a much more formal and extended period for training and evaluating the new trainees. Since the trainees have only recently been introduced into courts around *643 the state, there has not yet been enough time for the supervising court officers to perform all of their new training and evaluation duties. As time goes on, and the number of trainees increases, the day-to-day responsibilities of those supervisors responsible for training, evaluating and promoting them will undoubtedly change. Similarly, it is too early to determine how many of the line court officers will actually be assigned to courts of superior jurisdiction which may involve extra security considerations. OCA should be entitled to a reasonable amount of time to fully implement the new classifications and the revised duties and responsibilities that have arisen from the changes. Thus, in light of the complete and ongoing overhaul of the entire court security title series, it is too early to be able to determine, as a matter of law, that there is no substantial change in the duties and responsibilities of the affected titles.
The court acknowledges petitioner’s claims that the anticipated changes brought about by the reclassification have been slow to occur, and have not been well publicized to the leadership and members of the SCOA. All of the officers who have submitted affidavits state that no one from OCA has ever informed them, or discussed with them, how their duties and responsibilities may change in the future. The affidavits of the supervisors state that the assignment of the new trainees to their courts has not resulted in any change in the supervisors’ duties. Nor does it appear that any of the supervisors, or the union’s leadership, have been specifically apprised of the trainee program described in respondent’s papers. As noted above, however, OCA should be entitled to a reasonable amount of time to fully implement the new classifications before a court could determine, as a matter of law, whether the old and new positions are, in reality, the same. The instant decision is based solely on the facts as they exist today, and this court cannot predict how this case might be decided if the structural changes set forth in the reclassification plan do not result in any real on-the-job changes over time.
Accordingly, it is ordered and adjudged that the article 78 petition is denied and the proceeding is dismissed.

. Each nonjudicial employee of the Unified Court System is employed in a title which has a corresponding salary grade. The salary grade level for a given title is generally referred to as a “JG” level (e.g., JG-24).

. Those court officers with less than two years of service were placed in a specially earmarked title, and would later advance to the NYS court officer title upon completion of two years.

. Mr. Marks is the Administrative Director of the Unified Court System, and is responsible for all personnel matters, including the classification of positions in the court system.

. This new title also includes those officers formerly serving in the upper courts in the senior court officer title (JG-18), which was also eliminated.